JOHN R. WALSH, JR. AND MARCY W. WALSH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Walsh v. Commissioner
Docket No. 19769-85
United States Tax Court
T.C. Memo 1993-421; 1993 Tax Ct. Memo LEXIS 432; 66 T.C.M. (CCH) 704; September 13, 1993, Filed *432 Decision will be entered under Rule 155. John R. Walsh, Jr. and Marcy W. Walsh, pro se. For respondent: Paul J. Krug and Lamont R. Olson. FAY, POWELL
FAY, POWELL
MEMORANDUM OPINION FAY, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: By notice of deficiency dated March 26, 1985, respondent determined deficiencies in petitioners' Federal income tax liabilities for the taxable years 1979, 1980, 1981, and 1982 in the respective amounts of $ 111,401, $ 86,666, $ 87,248, and $ 50,453. Petitioners filed a timely petition with this Court. In the answer, respondent asserted that increased interest was *433 due under the provisions of section 6621(c). At the time the petition was filed petitioners resided in Bellevue, Washington. The deficiencies in this case result primarily from the disallowance of losses claimed in each year with respect to alleged straddle transactions of forward contracts for government-backed financial securities with First Western Government Securities, Inc. (First Western). [2] The First Western losses were the subject of the Court's opinion in , affd. , affd. on other issues . The trial in that case lasted more than 16 weeks. The record includes a transcript containing more than 10,000 pages and approximately 100,000 exhibits. The Court found based on that record, inter alia, that: "The transactions between First Western and its customers were illusory and fictitious and not bona fide transactions." . The Court also held that, even if the transactions had substance, they "were entered into primarily, *434 if not solely, for tax-avoidance purposes." . Based on the finding that the transactions were not bona fide, the Court concluded that additional interest under section 6621(c) was due on the deficiencies. . In concluding that the transactions were not bona fide, the Court examined various aspects of the First Western program, including the risk of profit and loss, the hedging operation, the margins required and fees charged, the pricing of the forward contracts, and the manner in which the transactions were closed. In all of these areas we found that the *435 First Western operations were deficient and not conducted as they should have been if bona fide financial transactions were being conducted. We also pointed out that there were other "gremlins" in First Western's world that dispelled the notion that these transactions were bottomed in financial reality -- reversing transactions months later, confirmations being months late, transactions being made with no documentation, etc. . In the case currently before the Court, the parties have stipulated the entire record in Freytag, into the record in this case. Furthermore, petitioners concede that their transactions with First Western were conducted in the same way as the transactions discussed in the Freytag case -- i.e., they supplied the same type of information to First Western, the same pricing algorithms were used, and the transactions were closed in the same way. Based on the stipulation and petitioners' concessions, respondent moved for partial summary judgment with regard to those parts of the deficiencies arising from the disallowance of the First Western losses and whether the underpayments of tax resulting from those losses *436 are subject to increased interest under section 6621(c). Summary judgment under Rule 121 is appropriate when "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of law." . We believe that partial summary judgment is appropriate based on our opinion in Freytag in the circumstances present here. While petitioners were not parties to the Freytag litigation and res judicata does not apply, the doctrine of stare decisis is applicable. ; see also . Petitioners concede that their First Western transactions are identical to the transactions in the Freytag case and have stipulated that record into this case. This Court found that based on that record the First Western transactions were illusory and fictitious in the Freytag case. In opposing respondent's motion, petitioners' position is somewhat obtuse. As we understand, they contend that the Court ignored "substantial *437 evidence" in the Freytag record that indicates that the First Western transactions were not shams. Petitioners, however, do not enlighten us as to the nature or identity of this "substantial evidence" that was ignored. It is true that in Freytag, as in most cases, there was evidence supporting a conclusion different from that reached by the Court. But, it is also true that there was substantial evidence supporting the factual conclusions in our opinion. We note, for example, in discussing the First Western prices and the experts' testimony thereon, we found that the analyses of respondent's experts more accurately reflected the reasonableness of First Western's prices. . The long and short of the matter was that we found respondent's experts were better armed. Similarly, we discounted testimony of the taxpayers' witnesses that they were at risk for more than their margin because of the substantial documentary evidence to the contrary. . In the final analysis, it appears that petitioners contend that we should have adopted *438 the taxpayers' evidence in that case and rejected respondent's evidence. But that matter is within the province of a trial court to decide. See , affg. . We have reviewed our opinion and the record in Freytag and note, as the Fifth Circuit observed in affirming our opinion: Bathed in the harsh light of economic reality the Taxpayers' other factual arguments amount to nothing more than a valiant effort to substitute the testimony of their expert witnesses for the findings of the Tax Court. [, affg. .]
We adhere to our opinion in . Respondent's motion for partial summary judgment will be granted with respect to the so-called First Western deficiencies and the increased interest under section 6621(c). We next consider whether a penalty should be awarded under section 6673(a)(1). Section 6673(a)(1) *439 provides in relevant part that when it appears to the Court that "proceedings before it have been * * * maintained by the taxpayer primarily for delay" (section 6673(a)(1)(A)) or "the taxpayer's position in such proceeding is frivolous or groundless" (section 6673(a)(1)(B)), the Court "may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000." In 1984, Congress noted that recent legislation [has] been designed, in whole or in part, to deal with the Tax Court backlog. [An example of these provisions is] the increased damages assessable for instituting or maintaining Tax Court proceedings primarily for delay or that are frivolous or groundless (sec. 6673) * * *.
* * * Congress has given the Tax Court sufficient tools to manage its docket, and that the responsibility for effectively managing that docket and reducing the backlog now lies with the Tax Court. * * * [We] note favorably the steps the Court has begun to take in consolidating similar tax shelter cases and dispensing with lengthy opinions in routine tax protester cases. The Court should take further action in these two areas, as well as to assert, without hesitancy in appropriate *440 instances, the penalties that the Congress has provided. [H. Conf. Rept. 98-861, 1984-3 C.B. (Vol. 2) 1, 239.]
This Court has decided many cases involving purported financial straddles similar, if not identical, to Freytag, e.g., , affd. sub nom. . [3] Although we did not award damages under section 6673 in Brown, we cautioned the taxpayers that our patience was running out "with respect to petitioners who file petitions or maintain positions based upon transactions which they knew or reasonably should have known to be factual shams." . In Freytag, we again eschewed section 6673, but this warning was reiterated and we stated that those cases were "the last free bites of the apple." . In addition, at a hearing in this case, petitioners were warned that damages could be imposed.[3]
*441 Notwithstanding, petitioners have insisted that we revisit First Western's world. While we must decide the cases that are before us, that does not mean that a taxpayer can come to us with impunity. In this regard, it would seem that, at a minimum, if a taxpayer is going to ask the Court to revisit First Western's world, he or she should have read the record and the opinion by the Fifth Circuit in Freytag. Petitioners apparently have done neither. [4] It would also seem that he or she would have read the Brown case, since it was cited in the Freytag opinion, and the subsequent affirmance of that case by the Court of Appeals for the Ninth Circuit in , affg. , to which an appeal in this case lies. If Freytag, or *442 any of the cases involving financial straddles, raised novel questions of law in which the Courts of Appeals might reasonably differ, perhaps we could understand the reason that a taxpayer would seek review by another circuit. But, when the issue is factual, and allegation of error is simply that we ignored certain unspecified parts of that record, then we conclude that petitioners are simply raising groundless arguments to delay the final settlement of their substantial tax liabilities by maintaining this action. [5] It was exactly for these reasons that Congress enacted section 6673(a), and, accordingly, we award to the United States a penalty in the amount of $ 5,000. An appropriate order will be issued and decision will be entered under Rule 155.
Footnotes
1. Section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In the notice of deficiency, respondent made adjustments to deductions claimed for investment interest expenses for 1981 and 1982 and for deductions claimed with regard to "Cobra Charters, Inc." for 1979, 1980, 1981, and 1982. By stipulation the parties have resolved these issues. The other adjustments are mathematical and will be resolved through the Rule 155 computations.↩
3. See also , affd. sub nom. , , affd. without published opinions sub nom. , ; .↩
4. The record in , has been available to petitioner since 1987.↩
5. We are aware that there were other issues in this case and those issues were settled without delay. The vast majority of the amount of the deficiencies, however, is rooted in the First Western transaction.↩