DALE C. DECKER AND MARJORIE DECKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Decker v. Commissioner
Docket No. 44950-85
United States Tax Court
T.C. Memo 1995-38; 1995 Tax Ct. Memo LEXIS 55; 69 T.C.M. (CCH) 1756; January 30, 1995, Filed *55 An order will be issued granting respondent's motion for summary judgment and a decision will be entered for respondent. Dale C. Decker and Marjorie Decker, pro se. For respondent: Lamont R. Olson. DAWSON; POWELL
DAWSON
MEMORANDUM OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Carleton D. Powell pursuant to section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge set forth below. OPINION OF THE SPECIAL TRIAL JUDGE POWELL, Special Trial Judge: This case is before the Court on respondent's Motion for Summary Judgment, filed September 16, 1994. The facts may be summarized as follows. By notice of deficiency issued September 20, 1985, respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $ 41,776. Petitioners were *56 residents of Grand Junction, Colorado, when they filed a timely petition with this Court. In the answer, respondent asserted that the deficiency was a substantial underpayment due to tax-motivated transactions and that the increased rate of interest under section 6621(c) was applicable. The deficiency in this case results from the disallowance of a loss in the amount of $ 170,335. The loss arises from alleged straddle transactions of forward contracts for Government-backed financial securities with First Western Government Securities, Inc. (First Western). The First Western losses were the subject of this Court's opinion in Freytag v. Commissioner, 89 T.C. 849 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. on other grounds 501 U.S. 868 (1991). This Court found, based on that record, inter alia, that "The transactions between First Western and its customers were illusory and fictitious and not bona fide transactions." Id. at 875. This Court alternatively held that, even if the transactions had substance, they "were entered into primarily, if not solely, for tax-avoidance *57 purposes." Id. at 876. Based on the finding that the transactions were not bona fide, this Court concluded that additional interest under section 6621(c) was due on the underpayments. Id. at 886-887. In concluding that the transactions were not bona fide, this Court examined various aspects of the First Western program, including the risk of profit or loss, the hedging operation, the margins required and fees charged, the pricing of the forward contracts that were involved, and the manner in which the transactions were closed. In all of these areas we found that the First Western operations were deficient and not conducted as they should have been if bona fide financial transactions were being conducted. With respect to the losses, this Court noted: Petitioners' portfolios were constructed so as to achieve their desired tax losses. In this regard, the most important required data supplied by petitioners were their requested tax losses. Indeed, the program could not be implemented without the tax information. Thus, in analyzing the program from a profit standpoint, from the first, the tax tail wagged an economic *58 dog. * * * [Id. at 878.]
We also pointed out that there were other "gremlins" in First Western's world that dispelled the notion that these transactions were bottomed in financial reality -- reversing transactions months later, confirmations being months late, and transactions being made with no documentation. Id. at 882. The trial in that case lasted more than 16 weeks. The original judge to whom the cases were assigned was unable to continue the trial, and another judge was appointed. The record includes a transcript containing more that 10,000 pages and approximately 100,000 exhibits. This Court's opinion was filed October 21, 1987. It took over a year for the parties to agree on the final decisions. The taxpayers appealed, and the Court of Appeals for the Fifth Circuit affirmed in 1990. Freytag v. Commissioner, 904 F.2d 1011 (5th Cir. 1990). A writ of certiorari was granted, and the Supreme Court affirmed the judgment of the Court of Appeals on June 27, 1991. Freytag v. Commissioner, 501 U.S. 868 (1991). After the opinion of the Supreme *59 Court, the Court calendared a series of hearings for cases that involved the First Western transactions. The purpose of these hearings was to determine whether summary judgment would be appropriate on the First Western issues in light of the Court's opinion in Freytag. This case was originally calendared for July 15, 1992, in San Francisco, California. At petitioners' request, the case was recalendared for October 7, 1992, in Dallas, Texas. At that hearing petitioners contended that their case was distinguishable from Freytag because they had a profit motive in entering into the transactions. As explained in the transcript of that hearing, if the transactions were not bona fide, as the Court found in Freytag, whether or not petitioners had a profit motive is essentially irrelevant. Petitioners did not proffer any facts that would suggest that their First Western transactions were different from the transactions in Freytag. Respondent orally moved for partial summary judgment. On September 16, 1994, respondent filed a written motion for summary judgment on the deficiency and increased interest under section 6621(c). Respondent's oral motion will be denied as *60 moot. The gravamen of respondent's motion is that the transactions involved in this case are identical to the transactions in Freytag v. Commissioner, supra. The motion is supported by an affidavit of respondent's counsel to that effect, by petitioners' 1980 Federal income tax return showing deductions claimed from the First Western transactions, and by documents establishing petitioners relationship with First Western. Summary judgment under Rule 121 is appropriate when "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of law." Krause v. Commissioner, 92 T.C. 1003, 1016 (1989). The nonmoving party cannot rest upon the allegations and denials in the pleading. The response, by affidavit or otherwise, must set forth specific facts showing the existence of a genuine issue of fact. Rule 121(d); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In their response to respondent's motion, petitioners have not alleged any material facts relevant to the issue whether their First Western transactions differ from the First Western transactions described in Freytag *61 v. Commissioner, supra.
Under these circumstances summary judgment is appropriate with respect to the First Western loss claimed and the increased interest, based on our opinion in Freytag v. Commissioner, surpra. While petitioners were not parties to the Freytag litigation and res judicata does not apply, the doctrine of stare decisis is applicable. Walsh v. Commissioner, T.C. Memo. 1993-421; see Simmons v. Union News Co., 341 F.2d 531, 533 (6th Cir. 1965); see also Leishman v. Radio Condenser Co., 167 F.2d 890 (9th Cir. 1948). Petitioners have not shown that the transactions in this case differ in a material manner from those involved in Freytag, and the holding in Freytag v. Commissioner, supra, is controlling here. Respondent's motion will be granted as to the deficiency. Section 6621(c)(1) provides that, if there is a "substantial underpayment attributable to tax-motivated transactions," the interest payable under section 6601 "shall be 120 percent of the underpayment rate". A substantial underpayment attributable to a tax-motivated transactions means *62 "any underpayment of taxes * * * attributable to one or more tax motivated transactions if the amount of the underpayment for such year * * * exceeds $ 1,000." Sec. 6621(c)(2). The term "tax motivated transaction" means, inter alia, "any sham or fraudulent transaction." Sec. 6621(c)(3)(A)(v). Thus, if a transaction is determined to be a "sham", the increased interest applies. In Freytag v. Commissioner, 89 T.C. at 887, we sustained the Commissioner's determinations that section 6621(c) applied to the First Western underpayments based on our finding that the transactions were "shams." Accordingly, increased interest under section 6621 applies to this case, and respondent's motion for summary judgment with respect to that issue is also granted. Rather than address the merits of respondent's motion, petitioners contend that respondent is barred by the doctrine of laches from asserting the deficiency. [2] This Court has considered the application of the doctrine of laches to tax cases. The doctrine of laches is an equitable remedy that is based on the injustice that could result from the enforcement of long-neglected rights; on the difficulty, if not *63 the impossibility, of determining the truth of the underlying controversy and reaching justice between the parties; and on the basis of public policy, its aim being the discouragement, for the peace and tranquility of society, of stale and outdated claims. The application of this equitable doctrine is not determined solely by the mere passage of time, but is left to the discretion of the presiding court based on the particular facts and circumstances of the case. In deciding whether or not to exercise its discretion in a particular case, courts usually look for: (1) Inexcusable delay or lack of diligence in asserting a claim by the party against whom the doctrine is to be applied, and (2) prejudice to the other party caused by reliance on his or her opponent's conduct. [Mecom v. Commissioner, 101 T.C. 374, 391 (1993), affd. 40 F.3d 385 (5th Cir. 1994); citations omitted.]
Although petitioners' case spans 10 years, there is no indication that respondent has not been diligent in attempting to bring this case and the other First Western cases to a close. The examination of the First Western investors involved complex *64 issues, and the test case procedure was instituted to expedite the litigation of the First Western issues. After this Court's opinion was filed, there was additional time for the appellate process. While any delay is regrettable, the delay here was not caused by respondent. Further, petitioners have not relied to their detriment on respondent's actions -- respondent has consistently asserted the deficiency. Thus, we find no basis for invoking the doctrine of laches. [3]
*65 An order will be issued granting respondent's motion for summary judgment and a decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners filed a Motion for Summary Judgment based on their laches argument. Consistent with this opinion, that motion will be denied.↩
3. In an addendum to petitioners' statement in lieu of appearance, petitioners seem to suggest that they erroneously reported $ 196,000 as income on their 1980 return. In responding to respondent's motion, petitioners do not raise this issue. Furthermore, at the October 7, 1992, hearing petitioners indicated that the income was derived from a partnership. A partner is taxed on his or her distributive share of the partnership's income irrespective of whether the income is actually distributed. United States v. Basye, 410 U.S. 441, 453↩ (1973). Petitioners also indicated that they incurred a net operating loss in 1986. This allegation has not been pursued. The year before the Court is 1980, and such a loss can only be carried back for 3 years. See sec. 172(b)(1)(A).