Daniel L. CARROLL and Ingrid N. Carroll, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. CV 98–5740(DRH).

United States District Court, S.D. New York.

Sept. 13, 2001.

Ingram Yuzek Gainen Carroll & Bertolotti, LLP, New York City by David G. Ebert, for Plaintiffs.

Eileen J. O'Connor, Assistant Attorney General, Tax Division, United States Department of Justice, Washington, D.C. by John A. Lindquist, for Defendant.

### MEMORANDUM OPINION AND ORDER

HURLEY, District Judge.

Pending before the Court in this action for recovery of federal income tax, interest, penalties and additions to tax assessed by the Defendant United States [hereinafter "IRS"] against taxpayer husband and wife Plaintiffs Daniel and Ingrid Carroll is (1) the IRS's motion, made pursuant to Rules 12(b)(1), 12(b)(6), and 56(c) of the Federal Rules of Civil Procedure, for an order dismissing the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, or alternatively, for summary judgment, (U.S.' Mot. Dismiss Alt. Summ. J.); (2) the Plaintiffs' cross-motion, made pursuant to Rule 15(d), to file a supplemental complaint, (Pls.' Notice Cross-Mot.); and (3) the IRS's motion, made pursuant to Local Civil Rule 6.3, for reconsideration of this Court's Memorandum and Order, dated October 23, 2000, *see Carroll v. United States*, No. CV 98–5740, 2000 WL 1819419 (E.D.N.Y. Oct.23, 2000) [hereinafter *"Carroll II"*], that had (a) granted Plaintiffs' motion, made pursuant to Federal Rule of Civil Procedure 56(a), for partial summary judgment with respect to their claim for refund of certain penalties assessed against them by the IRS, and (b) granted Plaintiffs' motion, made pursuant to Local Civil Rule 6.3, for reconsideration of this Court's Memorandum and Order, dated October 19, 1999, *see Carroll v. United States*, No. CV 98–5740, 1999 WL 1090814 (E.D.N.Y. Oct.19, 1999) [hereinafter *"Carroll I"*], that had originally denied Plaintiffs' Rule 56(a) motion. (U.S.' Notice Mot. Recons.)

### I. BACKGROUND

The legal framework underlying the instant motions is complex, involving the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324 (1982). The factual history in this case—involving 1995 tax assessments related to Plaintiffs' 1982 tax liabilities arising from an investment in a plastics recycling limited partnership, after proceedings in both the United States District Court for the Middle District of Florida and the United States Tax Court—is likewise complex. Therefore the Court sets forth in some detail the legal and factual background precipitating this litigation.

### A. TEFRA'S STATUTORY FRAMEWORK

Prior to the enactment of TEFRA, partnerships generally were not taxable entities under the Internal Revenue Code. *See Chimblo v. Commissioner*, 177 F.3d 119, 121 (2d Cir.1999). Typically, the income and expenses of the partnership would "flow through" to the partners and be taxed at the individual partner level. *See Transpac Drilling Venture v. Commissioner*, 147 F.3d 221, 223 (2d Cir.1998). However, that statutory setup "proved inefficient and often led to inconsistent results" as between different partners who could separately challenge the taxation of their partnership income, sometimes with different results. *See Monti v. United States*, 223 F.3d 76, 78 (2d Cir.2000) [hereinafter *Monti II* ]. Congress enacted TEFRA in 1982 to "ensure equal treatment of partners by uniformly adjusting partners' tax liabilities and channeling any challenges ... into a single, unified proceeding." *Kaplan v. United States*, 133

F.3d 469, 471 (7th Cir.1998) [hereinafter *Kaplan II* ]; *accord Chimblo,* 177 F.3d at 121.

In order to achieve consistent treatment of partners, TEFRA provides that the tax treatment of "partnership items" is to be determined at the partnership level. 26 U.S.C. § 6221. TEFRA defines a "partnership item" as "any item required to be taken into account for the partnership's taxable year . . . to the extent regulations prescribed by the [IRS] provide that . . . such item is more appropriately determined at the partnership level than at the partner level." *Id.* § 6231(a)(3). A "nonpartnership item" is defined in the negative as an item "which is (or is treated as) not a partnership item." *Id.* § 6231(a)(4). An "affected item" is "any item to the extent such item is affected by a partnership item." *Id.* § 6231(a)(5). Therefore an affected item is a hybrid in the sense that its proper assessment may require a determination at the individual partner level after the completion of the partnership level proceeding.

TEFRA requires partnerships to designate a "tax matters partner" (TMP) to serve as a liaison between the IRS and the individual partners in administrative proceedings, and as a representative of the partners in judicial proceedings. *See id.* § 6231(a)(7); *Addington v. Commissioner,* 205 F.3d 54, 60 (2d Cir.2000). The TMP is a fiduciary with the authority to represent and, under certain circumstances, bind the limited partners in such proceedings. *Transpac Drilling,* 147 F.3d at 223. The individual limited partners may designate any general partner to be the partnership's TMP. 26 U.S.C. § 6231(a)(7)(A). Absent such designation, the "general partner having the largest profits interest in the partnership at the close of the taxable year involved" is the TMP by default, *id.* § 6231(a)(7)(B), unless that procedure is impracticable, in which case the IRS may select some other partner to serve as TMP. *Id.* § 6231(a)(7).

After a partnership files its return for a tax year, the IRS may decide to commence an administrative proceeding in order to make adjustments to the return. The IRS has three years from the date the partnership return is due to issue a final partnership administrative adjustment ("FPAA") affecting liability for taxes attributable to "partnership items." *See id.* § 6229(a). However, this three year statute of limitations may be extended by agreement between the IRS and the partnership's TMP, whose consent binds all partners. *Id.* § 6229(b)(1)(B).

The IRS must notify partners of any adjustments it makes to partnership and nonpartnership items. Notice is given through an FPAA for adjustments to partnership items, *see id.* § 6223(a)(2), and through a "notice of deficiency" for nonpartnership items, *see id.* §§ 6211, 6212. *See also PAA Mgmt., Ltd. v. United States,* 962 F.2d 212, 214–15 (2d Cir.1992). To ease the burden of notifying partners in partnerships exceeding 100 members, TEFRA only requires that the FPAA be sent to "notice partners" (i.e., those who own at least one percent of the partnership) within 60 days after the IRS mails the FPAA to the TMP. *See* 26 U.S.C. §§ 6223(a)(2), (b)(1), (d)(2), 6231(a)(8). Thus, the IRS is not required to individually notify small-share partners (i.e., "nonnotice partners") of adjustments to partnership items; notice to the TMP is deemed constructive notice upon them. *Kaplan II,* 133 F.3d at 472. Rather, it is the responsibility of the TMP to forward a copy of the FPAA to non-notice partners. *See id.* § 6223(g). If the TMP fails to notify non-notice partners of adjustments to partnership items, it does not affect the

applicability of any adjustments or partnership proceedings. *See id.* § 6230(f).

For 90 days after the mailing date of the FPAA, the TMP has the exclusive right to file an action for readjustment of the partnership items in either Tax Court, the Court of Federal Claims, or a United States District Court. *Id.* § 6226(a). If the TMP fails to bring an action to contest the FPAA within that time period, any notice partner, or any group of non-notice partners holding at least a 5% interest in the aggregate, may file suit within the following 60 days in any one of those courts. *Id.* § 6226(b)(1). Once a petition challenging an FPAA is filed, all partners are considered parties to the action and will be bound by the decision regardless of whether they elected to participate. *Id.* § 6226(c); *Monti II,* 223 F.3d at 79. This process prevents subsequent, multiple suits by individual partners.

Once a court's decision in an action for readjustment of partnership items becomes final, it is conclusive with regard to the treatment of partnership items. 26 U.S.C. § 6230(c)(4). If the IRS decides to assess taxes upon the individual partners as a result of the outcome of such a proceeding, it must do so within a year from the date the decision becomes final, *id.* § 6229(d), by sending a notice of deficiency to each individual partner-taxpayer within that time. *See id.* § 6212(a).

**B. JURISDICTION OF FEDERAL DISTRICT COURTS OVER ACTIONS FOR RECOVERY OF TAXES WRONGFULLY ASSESSED OR COLLECTED**

Pursuant to 28 U.S.C. § 1346(a)(1), federal district courts enjoy original jurisdiction over

[a]ny civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum

alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

However, that broad grant of jurisdiction is tempered by certain procedural requirements, and by special rules applicable to "partnership items" under TEFRA.

Procedurally, 26 U.S.C. § 7422(a) provides that no such suit shall be maintained "until a claim for refund or credit has been duly filed" with the IRS. The taxpayer must file his claim for refund with the IRS within two years (according to the administrative limitation period applicable under the facts of this case) from the date he paid the tax that he seeks to recover. *Id.* § 6511(a). Once a claim for refund has been filed, the taxpayer must still wait six months before bringing suit, unless the IRS sooner renders an adverse decision on the claim. *Id.* § 6532(a)(1). An adverse decision on the claim triggers a two-year limitations period within which the taxpayer must bring suit. *Id.* The amount that the taxpayer may recover in such a suit may not exceed the amount he paid to the IRS during the two years immediately preceding the filing of his administrative claim for refund. *Id.* § 6511(b)(2)(B). These limits on the accrual period, limitation periods, and amount recoverable are jurisdictional in nature. *See Magnone v. United States,* 902 F.2d 192, 193 (2d Cir.1990) (per curiam) (the "prior claim rule" of § 7422(a) is jurisdictional); *Weisbart v. United States Dep't of Treas.,* 222 F.3d 93, 94 (2d Cir. 2000) (the limitation period of § 6511(a) is jurisdictional); *Roberts v. United States,* 242 F.3d 1065, 1067 (Fed.Cir.2001) (the accrual period of § 6532(a)(1) is jurisdictional); *Maiman v. IRS,* No. 96–CV–5566, 1998 WL 161003, at *1 (E.D.N.Y. Mar.27, 1998) (the limitations period of § 6532(a)(1) is jurisdictional), *aff'd mem.,* 182 F.3d 900 (2d Cir.1999); *Howard Bank*

*v. United States,* 759 F.Supp. 1073, 1074 (D.Vt.1991) (same), *aff'd mem.,* 948 F.2d 1275 (2d Cir.1991); *cf. Porter v. United States,* 919 F.Supp. 927, 932–34 (E.D.Va. 1996) (holding that § 6511(b)(2)(A), a companion provision to § 6511(b)(2)(B), is jurisdictional). *But cf. Kishnani v. IRS,* No. CV–91–3953, 1992 WL 167270, at *4 n. 2 (E.D.N.Y. June 24, 1992) (questioning, but declining to decide, whether § 6511(b)(2)(A) is a substantive, as opposed to jurisdictional, provision).

Special rules also limit the district court's jurisdiction to entertain actions for the recovery of tax "attributable to partnership items" under TEFRA. Specifically, pursuant to 26 U.S.C. § 7422(h) such actions may not be maintained "except as provided in section 6228(b)[1] or section 6230(c)[2]" of the Internal Revenue Code. *Id.* But if the exceptions contained in § 7422(h) do not apply, then § 7422(h) effectively preempts the general grant of jurisdiction in § 1346(a)(1), and a district court will lack subject matter jurisdiction over any claim for recovery of tax attributable to partnership items. *See Monti II,* 223 F.3d at 78; *Kaplan II,* 133 F.3d at 473.

A district court will also have jurisdiction over a claim for recovery of tax attributable to a partnership item if that item converts to a nonpartnership item in one of the several ways enumerated in § 6231(b)(1), which provides that a partner's partnership items

shall become nonpartnership items as of the date—

(A) the [IRS] mails to such partner a notice that such items shall be treated as nonpartnership items,

(B) the partner files suit under section 6228(b) after the [IRS] fails to allow an administrative adjustment request with respect to any of such items,

(C) the [IRS] enters into a settlement agreement with the partner with respect to such items, or

(D) such change occurs under subsection (e) of section 6223 (relating to effect of [IRS]'s failure to provide notice) or under subsection (c) of this section.

26 U.S.C. § 6231(b)(1)(A)-(D). In summary, should a partnership item fit into one of the exceptions to § 7422(h) or become a nonpartnership item under one of the subparagraphs of § 6231(B)(1), a district court will have jurisdiction to hear the claim. *See Hirshfield v. United States,* No. 99 Civ. 1828, 2001 WL 579783, at *3 (S.D.N.Y. May 31, 2001).

## C. FACTUAL HISTORY [3]

In 1982, Plaintiff Daniel L. Carroll ("Carroll") purchased an interest in a limited partnership known as Stevens Recycling Associates ("Stevens") for $16,667. (Compl. ¶ 11; U.S.' Resp. Req. Admis. ¶ 4.) As one of the partners of the law firm of Shea & Gould, he purchased the limited partnership interest in Stevens based upon the recommendation and advice of other of his law partners. (Compl. ¶¶ 8, 10.) Sam-

---

1. The exception provided for in § 6228(b) is not alleged to be applicable in this case. (*See* Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 21.)

2. The exception provided for in § 6230(c), which is claimed by Plaintiffs, allows an individual partner to file a claim for refund in district court on the grounds, inter alia, that the IRS "erroneously computed [a] computational adjustment" necessary to apply to that

partner an FPAA, settlement, or decision in a § 6226 action for readjustment of partnership items. *See* § 6230(c)(1)(A)(ii).

3. Where there is a dispute as to the facts set forth in this Part I.C, the Court has recited the version most favorable to Plaintiffs, in accordance with the standards recited *infra* Part II.B. 1.

uel Winer ("Winer"), Stevens's general partner, was the promoter and the TMP of various plastics recycling limited partnerships, including Stevens. (*Id.* ¶ 12; U.S.' Resp. Req. Admis. ¶ 4.) As a result of Carroll's purchase of one-third of a unit of Stevens, he and his wife claimed on their 1982 joint tax return a deduction for advance rentals in the amount of $13,064, an investment tax credit of $12,810, and a business energy credit of $12,810, thereby reducing their tax liability by $32,138. (Compl. ¶ 11; U.S.' Resp. Req. Admis. ¶ 5.)

On August 17, 1984, at the request of District Counsel for the IRS in Jacksonville, Florida, the Government filed a complaint against Winer in the United States District Court for the Middle District of Florida. (Compl. ¶ 13; U.S.' Resp. Req. Admis. ¶¶ 5–6.) In that complaint, the Government alleged that Winer had organized and promoted various abusive tax shelters, including Stevens, and had made gross valuation overstatements in connection with Stevens. (Compl. ¶ 14; *cf.* U.S.' Resp. Req. Admis. ¶ 7.) The district court apparently agreed, entering, at the IRS's request, a final judgment on February 18, 1985, permanently enjoining Winer, inter alia, from the "organization, promotion, advertising, marketing, selling or offering for sale of the Tax Shelter [Stevens]." *United States v. Winer,* No. 84–1123–CIV–T–13, slip op. ¶ 3(a) (M.D.Fla. Feb. 18, 1985) (Compl.Ex. A.). In addition, the court enjoined Winer from representing any investor in Stevens in order to obtain tax deductions or credits. *See id.* ¶ 3(b). Pursuant to the final judgment, Winer was to send a letter to each partner in Stevens tendering his resignation as TMP and waiving his right to intervene as TMP in any court proceeding on behalf of the partnership. *See id.* ¶ 4.

Winer resigned as TMP and sent each limited partner of Stevens a form notice informing him or her of the injunction. (Compl. ¶ 18; *cf.* U.S.' Resp. Req. Admis. ¶ 13.) The attorney representing the IRS in the district court proceeding selected Stuart Hirshfield ("Hirshfield"), one of the limited partners of Stevens, to serve as Stevens' replacement TMP. (Compl. ¶ 19.) The notice sent by Winer to the Stevens limited partners reflected Hirshfield's new status. (*Id.*)

While Winer was enjoined from acting as TMP and Hirshfield was serving as his replacement, the IRS sought to reinstate Winer as the TMP for Stevens for specific limited purposes. (*Id.* ¶ 21; U.S.' Resp. Req. Admis. ¶ 20.) Winer agreed to be reinstated under the belief that he could be compelled to do so, and under threat of independent legal action against him by the IRS. (Compl. ¶ 21.) Therefore, by "Joint Motion for Specific Relief from Final Judgment of Permanent Injunction," filed without notice to the Stevens limited partners, and notwithstanding that Hirshfield had not been removed as TMP, the IRS and Winer requested that Winer "be allowed to act as tax matters partner ... for the purpose of providing administrative services." (*Id.; cf.* U.S.' Resp. Req. Admis. ¶¶ 21–23.) Without Hirshfield's knowledge, or the knowledge of any of Stevens's limited partners, the district court granted that motion on September 17, 1996, and ordered that Winer "may act as tax matters partner for the purpose of providing administrative services." (Compl. ¶ 22; *cf.* U.S.' Resp. Req. Admis. ¶¶ 24–25, 27–28.)

At the request of the IRS, the "administrative service" provided by Winer was his signature on Forms 872–P extending the already expired three-year limitations period for issuance of an FPAA, thereby allowing the IRS to issue an FPAA to Stevens and to serve notices of deficiency upon the Stevens limited partners.

(Compl. ¶ 25; U.S.' Resp. Req. Admis. ¶ 29.) Winer never informed the Stevens limited partners that he had extended the limitations period. (Compl.¶ 25.) On or about June 5, 1989, the Government issued a Notice of FPAA to Stevens for tax years 1982, 1983, 1984, and 1985, which was addressed to Winer as TMP. (*Id.* ¶ 29; U.S.' Resp. Req. Admis. ¶¶ 31, 33.) The FPAA drastically adjusted Stevens' income and deductions. (Compl.¶ 29.)

On July 24, 1989, apparently in violation of the final judgment of the federal district court in Florida, Winer, representing himself to be Stevens' TMP, brought a § 6226 action for readjustment of the partnership items for tax years 1982 through 1985 in the United States Tax Court on behalf of Stevens. (*Id.* ¶ 31; U.S.' Resp. Req. Admis. ¶ 34; U.S.' Mot. Dismiss Alt. Summ. J. Ex. 2.) In response to Winer's petition, IRS's District Counsel in Boston, Massachusetts, filed an Answer in the Tax Court. (Compl.¶ 31.) Although the IRS's attorneys knew, inter alia, that Winer had been enjoined from acting as Stevens' TMP in any court proceeding, that Hirshfield had been appointed as Stevens' TMP, and that Winer was not acting as the Stevens' limited partners' fiduciary, (*id.* ¶ 33, *see id.* ¶ 35), but under a conflict of interest, *cf. Transpac Drilling,* 147 F.3d at 227–28, the IRS failed to raise these defenses in its Answer or otherwise inform the Tax Court of these facts, (Compl.¶ 33), instead pursuing a judgment from the Tax Court, (*id.*).

On November 9, 1993, pursuant to the Tax Court Rule of Practice and Procedure 248(b), the IRS filed a Motion for Entry of Decision in Tax Court, representing that Winer had "entered into a settlement agreement" with the IRS and "agreed to the proposed decision." (*Id.* ¶ 35; *see* U.S.' Resp. Req. Admis. ¶ 38.) Again, the motion did not disclose to the Tax Court the restraints on Winer's authority to rep-resent and bind the limited partners, or Winer's lack of a fiduciary relationship. (Compl.¶¶ 35–36.) Nor did the motion disclose that neither the IRS nor Winer would provide notice of the settlement or the judgment of the Tax Court to Stevens' limited partners. (*Id.* ¶¶ 35, 38, 40.)

Pursuant to Winer's settlement with the IRS, the Tax Court, on February 23, 1994, entered an undated decision (the "February 1994 Decision") on its docket relating to Stevens' income for tax years 1982, 1983, 1984, and 1985. *Carroll II,* 2000 WL 1819419, at *1. On June 6, 1994, the Tax Court issued an Order and Decision (the "June 1994 Decision") that purported to vacate the February 1994 Decision on the grounds that through inadvertent clerical error, it did not bear the requisite "entered date." *Id.* at *1. However, the June 1994 Decision was otherwise identical to the February 1994 Decision in all material respects. *Id.*

**D. TAX ASSESSMENTS, PAYMENTS, AND REQUESTS FOR REFUND AND/OR ABATEMENT**

**1. ASSESSMENTS THE SUBJECT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT IN CARROLL I AND CARROLL II**

On July 3, 1995, the IRS issued Plaintiffs a notice of deficiency, proposing deficiencies for the 1982 tax year for negligence penalties and valuation overstatement penalties under 26 U.S.C. §§ 6653(a) and 6659. (Carroll Aff. of 4/15/99 ¶ 8 & Ex. D.) On November 20, 1995, Plaintiffs were assessed the penalties under these two statutes in the amounts of $51,357.27 and $7,686.00, respectively, plus interest. (U.S.' Local R. 56.1 Stmt. Facts ¶ m & Ex. 4; Pls.' Resp. U.S.' Local R. 56.1 Stmt. Facts ¶ M.) Plaintiffs paid to the IRS a total of $81,391.95 in respect of the penalty additions and interest. (U.S.' Local R. 56.1 Stmt. Facts ¶ o; Pls.' Resp. U.S.' Local R. 56.1 Stmt. Facts ¶ O.)

In *Carroll II,* familiarity with which is assumed, this Court held that Plaintiffs were entitled to recovery of $81,079.16 that they paid with respect to the July 3, 1995, notice of deficiency. 2000 WL 1819419, at *8. In that regard, the Court held as a matter of law that pursuant to 26 U.S.C. §§ 7481(a)(1) and 7483 (providing that a decision of the Tax Court becomes final upon the expiration of the time allowed for filing a notice of appeal, which is 90 days after the Tax Court's decision is entered), the February 1994 Decision of the Tax Court became final on May 24, 1994, such that (1) the Tax Court had no jurisdiction to vacate the final order by later order; and (2) the July 3, 1995, notice of deficiency issued to Plaintiffs was time-barred as a matter of law under the one-year limitation period of § 6229(d). *Id.* at *5, *8.. In short, the Court granted Plaintiffs' motion for partial summary judgment on Count IX of the Complaint for the reasons identified in Count III. *See* discussion *infra* Part I.E.

### 2. Other Challenged Assessments

On July 17, 1995, the IRS assessed additional tax against Plaintiffs for the year 1982 in the amount of $32,138.00. The same day, the IRS also assessed against Plaintiffs tax-motivated transaction interest in the amount of $99,488.54, pursuant to 26 U.S.C. § 6621(c). (U.S.' Local R. 56.1 Stmt. Facts ¶ j & Ex. 4; Pls.' Resp. U.S.' Local R. 56.1 Stmt. Facts ¶ J; Carroll Aff. Opp'n Mot. Dismiss Alt. Summ. J. & Supp. Cross–Mot. Supplement Compl. Ex. 1.) Plaintiffs paid to the IRS a total of $136,913.43 on account of these assessments of tax and interest. (U.S.' Local R. 56.1 Stmt. Facts ¶ k; Pls.' Resp. U.S.' Local R. 56.1 Stmt. Facts ¶ K.)

### 3. Plaintiffs' Payments and Requests for Refund and/or Abatement

With respect to the assessments against Plaintiffs described *supra* Parts I.D.1–2,

Plaintiffs paid the following amounts on the following dates:

| | |
|---|---|
| 09/01/95 | $32,138.00 |
| 10/12/95 | 3,000.00 |
| 11/02/95 | 3,000.00 |
| 11/30/95 | 3,000.00 |
| 01/16/96 | 95,771.43 |
| 04/15/96 | 563.55 |
| 06/03/96 | 20,000.00 |
| 07/18/96 | 43.00 |
| 08/13/96 | 2,000.00 |
| 09/12/96 | 2,000.00 |
| 10/16/96 | 2,000.00 |
| 11/15/96 | 51,295.52 |
| 11/27/96 | 3,186.13 |
| 03/11/97 | 910.30 |

(U.S.' Local R. 56.1 Stmt. Facts Ex. 4.)

On May 29, 1996, Plaintiffs executed a Form 843 (i.e., a "Claim for Refund and Request for Abatement") and a Form 1040X (i.e., an "Amended U.S. Individual Income Tax Return"). (U.S.' Opp'n Pls.' Stmt. Facts Local R. 56.1 ¶ 25 & Ex. 8.) The Forms 843 and 1040X were mailed under cover letter dated May 30, 1996, and received by IRS on June 4, 1996. (*Id.* Exs. 7, 8.) The cover letter requested "that these claims for refunds be expedited." (*Id.* Ex. 7.)

The face of Form 843 references §§ 6653(a) and 6659 (i.e., the provisions of the Internal Revenue Code under which Plaintiffs were assessed deficiencies the subject of *Carroll I* and *Carroll II* ). An "Addendum to Form 843" addresses a list of reasons argued by Plaintiffs as to why the deficiencies assessed under these provisions "should be abated and, to the extent paid, refunded to the taxpayer." The first reason is stated as follows:

1. The negligence penalty and valuation overstatement penalty assessments in the respective amounts of $51,351.27 and $7,686.00 made under Sections 6653(a) and 6659 of the Internal Revenue Code for the year [1982] are invalid because the underlying tax assessments upon which they are based are invalid

and/or barred by the statute of limitations for the reasons more fully set forth in Form 1040X (copy attached).

Plaintiffs' "Addendum to Form 1040X," in turn, makes the specific argument—accepted by this Court in *Carroll II*—that because the February 1994 Decision of the Tax Court became final on May 24, 1994, the IRS's July 3, 1995, notice of deficiency was time-barred as a matter of law under the one-year limitation period of § 6229(d).

By a fill-in-the-blank form letter dated September 13, 1996, the IRS wrote Plaintiffs:

Dear T/P

This is in reply to your inquiry dated 5–29–96. The issue you raise in your correspondence is related to the following partnership: STEVENS RECYCLING. Your request for abatement is denied for the reason explained below.

This partnership is subject to the uniform partnership proceedings of the Internal Revenue Code (Section 6221 and other sections, also known as the TEFRA partnership proceedings).

The partnership proceedings for the subject partnerships were completed due to the reason checked below:

√ Court decision entered and became final on 6/6/94.

___ Final Partnership Notice (FPAA) defaulted on __/__/__.

The issue you have raised was not raised during the partnership proceeding and can not be raised after the proceedings have been completed. Since the partnership proceedings have been completed, we will not consider a request for abatement.

If you have received a Notice of Deficiency determining penalties with respect to your investment in the above partnership, you should follow the instructions set forth in the Notice of Defi-ciency concerning the alternatives available to you; either agreement to the assessment of the penalties or your right to petition the Tax Court.

(Carroll Aff. Opp'n Mot. Dismiss Alt. Summ. J. & Supp. Cross–Mot. Supplement Compl. ¶ 3 & Ex. 4.) This letter does not recite whether it is intended as a denial of Plaintiffs' Form 843 "inquiry," or Plaintiffs' Form 1040X "inquiry," or both.

On August 10, 1998, Plaintiffs executed another Form 843 ("August 1998 Form 843"), which was received by the IRS on August 19, 1998. (*Id.* ¶ 5, Ex. 5.) The August 1998 Form 843 "request[ed] a recalculation of the interest due on the assessment for 1982 and a refund of $1,222.75 plus interest." This recalculation was requested on the basis that the IRS had allocated each of Plaintiffs' payments dated 10/12/95, 11/02/95, and 11/30/95, as well as a portion of Plaintiffs' payment dated 01/16/96, to penalties assessed against Plaintiffs (which were accruing interest at a rate of 9%), rather than to taxes and interest assessed against Plaintiffs (which were accruing interest at the rate of 10.6%). The August 1998 Form 843 also requested that the IRS eliminate a penalty of $160.69 assessed against Plaintiffs, since Plaintiffs knew of no reason justifying the assessment of that penalty, and the IRS had not yet offered one.

On September 8, 1999, Plaintiffs executed an "Amended" Form 843 that purported to

amend[ ] the previously filed Claim for Refund and Request for Abatement dated May 29, 1996, a copy of which in annexed hereto, (which Claim for Refund and Request for Abatement has not been acted upon by the IRS), so as to amends [sic] said Claim for Refund and Request for Abatement dated May 29, 1996 to state that the full amount of

penalties and interest sought totaling $81,955.50 has been paid.

(*Id.* ¶ 6 & Ex. 7 [hereinafter "Amended Form 843–1996"].) Annexed to Amended Form 843–1996 were copies of Plaintiffs' Forms 843 and 1040X dated May 29, 1996.

On the same date, Plaintiffs executed another "Amended" Form 843 that purported to

amend[ ] the previously filed Claim for Refund and Request for Abatement dated August 10, 1998, a copy of which is annexed hereto as Exhibit A, (which Claim for Refund and Request for Abatement has not been acted upon by the IRS), so as to:

1. Consolidate therewith the previously filed Claim for Refund and Request for Abatement dated May 29, 1996, a copy of which is annexed hereto as Exhibit B, which Claim for Refund and Request for Abatement was never acted upon by the IRS.

2. Amend the Claim for Refund and Request for Abatement dated May 29, 1996 to state that the full amount of penalties and interest sought totaling $81,995.50 has been paid as indicated on the material included with the Claim for Refund and Request for Abatement dated August 10, 1998.

(*Id.* ¶ 6 & Ex. 8 [hereinafter "Amended Form 843–1998"].) Annexed to Amended Form 843–1998 were copies of the August 1998 Form 843, as well as Plaintiffs' Forms 843 and 1040X dated May 29, 1996.

Plaintiffs' Amended Forms 843–1996 and 843–1998 were sent under separate cover letters dated September 10, 1999, and were received by the IRS on September 13, 1999. (*Id.* ¶ 6 & Exs. 7, 8.) By letter dated January 4, 2000, the IRS responded, in relevant part, to Plaintiffs' "inquiry of September 10, 1999," as follows:

We understand you are concerned about the tax, penalties and interest assessments on the 1982 tax account.

To resolve your concern we reviewed the account and based on your explanation, we reapplied the payments designated for tax and tax motivated interest as per your request. This results in a decrease in the amount of interest charged of $1,056.09. You will receive a refund of $1056.09 plus interest when the adjustment posts, in about four weeks, if you own no other federal agency.

When additional tax is not paid within the ten days of the notice, a late payment penalty is charged. The notice to pay the additional tax was issued July 17, 1995, payment was not received until September 1, 1995, therefore, the late payment penalty of $160.69 was assessed.

Your claim filed September 10, 1999 for abatement of the penalties and interest has been denied. You will receive a formal letter of denial, which will explain your appeal rights, under separate cover.

(*Id.* ¶ 9 & Ex. 11.)

Finally, by letter dated January 18, 2000, Plaintiffs received the IRS's formal letter of denial, which stated, in pertinent part,

This letter is your legal notice that we have disallowed your claim(s). We can't allow your claim(s) for refund or credit . . . for the reason(s) listed below.

The Internal Revenue Services [sic] position is the Tax Matters Partner was in authority at the time of signing and was reinstated. The penalties are valid assessments.

(Pls.' Reply Aff. Supp. Cross–Mot. Supplement Compl. Ex. 12.)

### E. PLAINTIFFS' COMPLAINT

In their Complaint, filed September 11, 1998, Plaintiffs claim (1) that the tax assessments against them that rest upon the validity of Tax Court's proceedings are time-barred, invalid, or otherwise without force and effect, since Winer had no authority to sign Form 872–P extending the three year limitations period for issuance of an FPAA, because Winer had no authority to either commence or settle action for readjustment of the partnership items in the Tax Court, and because the limited Stevens partners were effectively unrepresented, or represented by someone who the IRS knew to be acting under a conflict of interest (*see* Compl. ¶¶ 24–39) [hereinafter "Count I"]; (2) that as a result of the IRS's actions, Plaintiffs were deprived of appropriate notice of the Tax Court proceedings, of the opportunity to file a petition challenging the FPAA, of notice of any settlement of the Tax Court proceedings, and of "the benefits of the TEFRA partnership audit provisions," such that they were deprived of their constitutional right to due process (*id.* ¶¶ 40–41) [hereinafter "Count II"]; (3) that even if the February 1994 Decision of the Tax Court were not time barred or invalid, any assessment of tax or statutory interest pursuant to that decision is time-barred by 26 U.S.C. § 6229(d) (*id.* ¶¶ 42–44) [hereinafter "Count III"]; (4) that because the Tax Court did not find the Stevens partnership to have been engaged in a tax-motivated transaction within the meaning of 26 U.S.C. § 6621(c)(3), there is no basis for imposition of the penalty rate of interest pursuant to § 6621(c) of the Code (*id.* ¶ 45) [hereinafter "Count IV"]; (5) that "the resignation of Winer as the TMP and the [IRS]'s failure to follow the mandate of the applicable Regulations in selecting and dealing with the substitute TMP and attempting to reinstate Winer resulted in the imposition of excessive interest against the [P]laintiffs from February 18, 1986" such that this amount of excessive interest should be abated "[p]ursuant to Section 6404(e) and any other provision of law, regulation, ruling, or judicial doctrine," and to the extent paid, refunded (*id.* ¶ 46) [hereinafter "Count V"]; (6) that the IRS, by "actively aid[ing] and requir[ing] Winer to violate his fiduciary obligations to the Stevens Partners for its own benefit ... is estopped to collect taxes, interest and penalties assessed with [the] consent of Winer as TMP when he was as a matter of fact, the de facto agent of the [IRS] rather than the partners he was alleged to represent" (*id.* ¶ 47) [hereinafter "Count VI"]; (7) that pursuant to the decisions of Tax Court in *Miller v. Commissioner*, No. 10382–86, and *Miller v. Commissioner*, No. 10383–86, the IRS "conceded that the increased rate of interest imposed by Section 6621(c) of the Code was not applicable in a case presenting issues that are identical to those involved in the instant case" such that, according to the consistency rules of 26 U.S.C. § 6224(c)(2), Plaintiffs are entitled to the terms of the *Miller* decisions, requiring a refund of the penalty rate of interest of § 6621(c) (*id.* ¶¶ 48–49) [hereinafter "Count VII"]; (8) that pursuant to 26 U.S.C. § 7430, Plaintiffs are entitled to reasonable administrative costs incurred in connection with filing their claim for refund and in bringing this action in support of their claim for refund (*id.* ¶ 50) [hereinafter "Count VIII"]; (9) that the assessments for additions to tax for negligence and valuation@ overstatement under §§ 6653(a) and 6659 are time barred and/or invalid for the same reasons set forth in Counts I and III (*id.* ¶¶ 55–56) [hereinafter "Count IX"]; (10) that the negligence penalty assessments under § 6653(a) are invalid because the IRS conceded that such negligence penalties were inapplicable *Miller v. Commissioner*, No.

10382–86, and *Miller v. Commissioner*, No. 10383–86, such that, according to the consistency rules of 26 U.S.C. § 6224(c)(2), Plaintiffs are entitled to the terms of the *Miller* decisions, requiring the negligence penalty assessments to be refunded to Plaintiffs (*id.* ¶¶ 57–58) [hereinafter "Count X"]; (11) that the negligence penalty assessments under § 6653(a) are invalid because Carroll was diligent in determining to invest in Stevens and relied upon competent and disinterested professional advisers in doing so (*id.* ¶ 59) [hereinafter "Count XI"]; (12) that the valuation overstatement penalty under § 6659 is invalid because the underpayment was not attributable to a valuation overstatement within the meaning of that provision (*id.* ¶ 60) [hereinafter "Count XII"]; and (13) that the valuation overstatement penalty under § 6659 is invalid because there was a reasonable basis for the valuation claimed on Plaintiffs' return, which was made in good faith (*id.* ¶ 61) [hereinafter "Count XIII"].

## II. DISCUSSION

### A. IRS'S MOTION TO RECONSIDER CARROLL II's RECONSIDERATION OF CARROLL I

The IRS raises three grounds for reconsideration of *Carroll II*'s reconsideration of *Carroll I*. The Court concludes that the IRS's first two arguments lack merit, but that its third argument, which goes to the Court's subject matter jurisdiction, warrants partial reconsideration of *Carroll II*.

### 1. Effect of Post–1969 Amendments to 26 U.S.C. § 7459(c)

First, the IRS contends that this Court in *Carroll II* incorrectly failed to account for certain post–1969 amendments to 26 U.S.C. § 7459(c) in concluding that, for purposes of determining the time in which to take an appeal, the provision's reference to the "rendering" of a decision lacks the

significance that the IRS ascribes to it. (*See* Mem. Law Supp. U.S.' Mot. Recons. at 7–8.) Whatever the meaning of the amendments cited by the IRS beyond demonstrating that § 7459(c) remains "viable" and "not merely some superfluous legislative anachronism," (*id.* at 8; *but cf.* Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 30 n. 18), the amendments do not demonstrate that a Tax Court decision must be dated before it can become final or that the date a decision is "rendered" has independent significance from the date that it is "entered" for purposes of determining the window in which to take an appeal. Nor, as suggested by the IRS, (Mem. Law Supp. U.S.' Mot. Recons. at 8), would the Tax Court's interpretation of § 7459(c) be entitled to deference (entertaining, for the moment, the speculative notion that the Tax Court in fact interpreted or relied upon § 7459(c) in issuing the June 1994 Decision). *See Callaway v. Commissioner*, 231 F.3d 106, 115 (2d Cir. 2000).

### 2. Res Judicata Effect of Tax Court's June 1994 Decision

Second, the IRS asserts that this Court "failed to address the [IRS]'s objection that [P]laintiffs are barred under the doctrine of res judicata from collaterally attacking the [June 1994 Decision] of the . . . Tax Court (from which no appeal was taken)." (Mem. Law Supp. U.S.' Mot. Recons. at 1.) That assertion is incorrect. The Court stated in *Carroll II* that it had considered the IRS's other arguments concerning Plaintiffs' motion for partial summary judgment and found that they did not alter its decision to grant reconsideration of *Carroll I*. 2000 WL 1819419, at *8.. Therefore the IRS's argument premised on the preclusive effect of the June 1994 Decision is procedurally barred as a repetitive argument on an issue already considered by the Court. *See Thomas v. A.R.*

*Baron & Co.,* 967 F.Supp. 785, 790 (S.D.N.Y.1997). Notwithstanding that the IRS's reassertion of this argument is procedurally barred, the Court explains below why the argument is substantively unpersuasive.

The IRS reasons that because Plaintiffs were by statute constructive participants in the Tax Court proceeding initiated by Winer for readjustment of partnership items, (*see* Reply Br. Supp. U.S.' Mot. Recons. at 1 (citing 26 U.S.C. § 6226(c))), they are bound by the decisions of the Tax Court, even if those decisions are in error, and even if those decisions are "voidable" for lack of jurisdiction. (Mem. Law Supp. U.S.' Mot. Recons. at 2.) According to the IRS, in every decision of the Tax Court inheres the Tax Court's determination that it has jurisdiction to issue such decision. (*Id.*) Therefore, the IRS maintains, the Tax Court's tacit determination that it had jurisdiction to issue the June 1994 Decision, notwithstanding that the February 1994 Decision had already become final, cannot be collaterally attacked in this Court. (*Id.* at 2–4.) Instead, Plaintiffs' "exclusive manner to challenge ... whether the Tax Court had the ability to vacate the undated [February 1994] Decision and to enter [the June 1994] Decision ... was to appeal" the latter. (*Id.* at 5.)

The Court rejects the IRS's argument. The IRS assumes improvidently that Plaintiffs' action for recovery of taxes is necessarily a collateral attack on the jurisdiction of the Tax Court, rather than an attack on the IRS's interpretation of the legal effect of the June 1994 Decision as restarting the clock on the time period within which the IRS was required to serve its notice of deficiency upon Plaintiffs. *Cf. Banque Nationale De Paris v. 1567 Broadway Ownership Assocs.,* 248 A.D.2d 154, 155, 669 N.Y.S.2d 568, 569 (1st Dep't 1998) (distinguishing a collateral attack upon a judgment, on the one hand, from a legal challenge to an erroneous interpretation of that judgment, on the other). Although in *Carroll II* this Court concluded that the "Tax Court had no jurisdiction to vacate [the February 1994 Decision] by later order,"—a conclusion the Court finds no reason to upset—even if it were assumed to the contrary that the Tax Court did in fact have jurisdiction to issue the June 1994 Decision vacating the February 1994 Decision, that does not mean that June 1994 Decision, or the vacatur contained therein, had the legal effect of depriving the February 1994 Decision of the finality it had attained on May 24, 1994, as the IRS seems to believe it did.

Rather, like those cases in which Federal Rule of Civil Procedure 60(a) is used to correct clerical mistakes in judgments without restarting or tolling the time in which to take an appeal,[4] the June 1994 Decision "did not make any meaningful change to the prior order and therefore did not start the statute of limitations clock anew." *Hirshfield,* 2001 WL 579783, at *10. So concluded Judge Sweet upon identical facts in an action for recovery of taxes paid by another Stevens partner. *See id.*

■■■ The Court agrees with Judge Sweet's analysis on this point.[5] Even if

---

**4.** *See, e.g., Lieberman v. Gulf Oil Corp.,* 315 F.2d 403, 404 (2d Cir.1963) ("The entry of the order correcting a mistake in the judgment pursuant to Rule 60(a) did not start the time for appeal running again. 'The mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought.'" (quoting *FTC v. Minneapolis–Honeywell Regulator Co.,* 344 U.S. 206, 211, 73 S.Ct. 245, 97 L.Ed. 245 (1952))).

**5.** Judge Sweet ultimately concluded that he could not rule on the merits of the taxpayers' statute of limitations defense to the IRS's no-

the Tax Court had unquestioned jurisdiction to vacate and reenter the February 1994 Decision as postdated, that jurisdictionally sound vacatur and reentry would have had no legal effect on the time period within which the IRS was required to serve its notice of deficiency upon Plaintiffs. The important point here is that the Tax Court's vacatur and reentry corrected a mere clerical error without purporting to restart the limitations clock, and without changing the substantive rights of the parties in such a way as would restart the running of the limitations clock as a matter of law. As explained in *Robert Louis Stevenson Apartments, Inc. v. Commissioner*, 337 F.2d 681 (8th Cir.1964) (cited in 1967 Advisory Committee Note to Federal Rule of Civil Procedure 13(a)), it is in those circumstances when the Tax Court's correction or vacatur would necessarily address " 'questions of substance' " or go "to the core of the Tax Court's conclusion" that the time in which to appeal would run from the date of such correction or vacatur. *See id.* at 683–85. On the other hand, where, as here, the correction or vacatur addresses a " 'mere matter of form,' " it does not deprive the Tax Court's decision of finality. *See id.* at 684; *Seiberling Rubber Co. v. United States*, 156 Ct. Cl. 219, 297 F.2d 842, 844–46 (1962) (four judge panel) (where Tax Court, on its own motion, modified its decision within the thirty-day window before such decision was to become final, but the modification was "purely a formal or mechanical one," the Tax Court's correction could not extend or restart the running of the thirty-day period). Because Plaintiffs' entitlement to the recovery of penalties they paid to the IRS need not hinge upon whether the Tax Court lacked jurisdiction to enter the June 1994 Decision, but upon whether that decision, assuming its validity, had any legal effect on the time in which the IRS was required to issue its notice of deficiency, the IRS's res judicata argument is inapplicable, and need not be considered further.[6],[7]

tice of deficiency because such a defense is a "partnership item" over which the district courts have no jurisdiction under § 7422(h). *Hirshfield*, 2001 WL 579783, at *11 & n. 4. In reaching that jurisdictional determination, Judge Sweet relied almost exclusively on cases holding that a statute of limitations defense to an untimely issuance of an FPAA to a partnership is a "partnership item" within the meaning of § 7422(h), rather than cases addressing whether a statute of limitations defense to an untimely issuance of a notice of deficiency to an individual taxpayer constitutes such an item. In this case, the Court concludes that § 7422(h) poses no jurisdictional bar to the Plaintiff's recovery of negligence and valuation overstatement penalties assessed under §§ 6653(a) and 6659. In the first place, the IRS has expressly, and at some length, disavowed the notion that § 7422(h) bars such recovery. (*See* Reply Br. Supp. U.S.' Mot. Recons. at 3 ("[I]t is not accurate to view a statute of limitations defense itself as a 'partnership item.' "); *id.* at 4 ("[W]e are not arguing here that § 7422(h) bars [P]laintiffs' efforts to have the penalties refunded, since penalties are not partnership items.").)

Moreover, caselaw bears out the conclusion that penalties assessed under §§ 6653(a) and 6659 constitute "affected items," not "partnership items," such that § 7422(h) poses no jurisdictional bar to their recovery. *See, e.g., Clark v. United States*, 68 F.Supp.2d 1333, 1346–48 (N.D.Ga.1999); *see also Chimblo*, 177 F.3d at 121 ("Penalties assessed against a partner based on the partner's tax treatment of partnership items on his individual return are examples of affected items.").

6. The Court observes, however, that the adoption of the IRS's position on this point would require of these Plaintiffs remarkable prescience. Plaintiffs were not aggrieved by the June 1994 Decision until July 3, 1995 (the date the IRS relied upon that decision to issue, in untimely fashion, a notice of deficiency). By that date, of course, they had long since lost their right to take the protective appeal the IRS suggests they ought to have taken.

7. The Court is aware of the decision of the United States Court of Federal Claims, upon

### 3. *Jurisdictional Limitation on Plaintiffs' Amount of Recovery*

■ Third, the IRS raises for the first time in this second motion for reconsideration[8] its argument that § 6511(b)(2)(B) limits the amount that Plaintiffs may recover to $20,000. (Mem. Law Supp. U.S.' Mot. Recons. at 5–7.) Because § 6511(b)(2) is jurisdictional in nature, this argument may be raised for the first time on a motion for reconsideration. *Zeier v. United States IRS*, 80 F.3d 1360, 1363–64 (9th Cir.1996). Section 6511(b)(2)(B), which applies to tax penalties as well as taxes alone, *e.g., Pham v. United States*, 42 Ct. Cl. 886, 888 (1999), provides that the amount a taxpayer may recover in his claim for refund "shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim." 26 U.S.C. § 6511(b)(2)(B). Although Plaintiffs paid a total of $81,391.95 in penalty additions and interest in several payments between May 29, 1996, and March 7, 1997, (U.S.' Local R. 56.1 Stmt. Facts ¶ o; Pls.' Resp. U.S.' Local R. 56.1 Stmt. Facts ¶ O), the IRS points out that only one installment payment of $20,000, made on June 3, 1996, had been paid as of the date Plaintiffs' Form 843 dated May 29, 1996, was received by the IRS on June 4, 1996.[9] (Mem. Law Supp. U.S.' Mot. Recons. at 5.) Because only $20,000 had been paid in respect of penalty additions during the two years immediately preceding June 4, 1996, it is the IRS's contention that § 6511(b)(2)(B) jurisdictionally limits any recovery to that amount.

This argument is closely related to another jurisdictional argument raised by the IRS in its own motion to dismiss, or in the alternative, for summary judgment. The IRS urges that Plaintiffs' recovery of negligence and valuation overstatement penalties is barred under the "prior claim rule" of § 7422(a), because under *Rock Island, Arkansas & Louisiana Railroad Co. v. United States*, 254 U.S. 141, 41 S.Ct. 55, 65 L.Ed. 188 (1920), and its progeny, "a claim filed prior to payment is nothing more than a request for abatement, and therefore cannot constitute a duly filed claim for refund" within the meaning of § 7422(a). (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 36; Reply Br. Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 7.) When the prior claim rule of § 7422(a) is read together with the applicable limitations bar of § 6511(a), requiring an administrative claim for refund to be brought within two years from the time the tax was paid, "the import of these sections is clear: unless a claim for refund of a tax has been filed within the time limits imposed by § 6511(a), a suit for refund . . . may not be maintained in any court." *United States v. Dalm*, 494 U.S. 596, 602, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (quoted in Mem.

---

identical facts, in *Conway v. United States*, 50 Fed.Cl. 273 (2001), which disagrees with both this Court's analysis in *Carroll II* and Judge Sweet's analysis in *Hirshfield*. 50 Fed.Cl. at 277–281 & n. 5. The Court has considered that decision fully in reaching its conclusion today.

**8.** Although the IRS had never previously raised this argument in its briefing on Plaintiffs' motion for partial summary judgment, the Court observes that the argument had been raised separately in the IRS's briefs on its own motion to dismiss, and in the alternative, for summary judgment, which was filed

during the pendency of Plaintiffs' motion for reconsideration of the Court's decision in *Carroll I*.

**9.** Although Plaintiffs made several payments prior to June 3, 1996, those payments were allocated, at Plaintiffs' request, to taxes and interest assessed (which were accruing interest at the rate of 10.6%), rather than to penalty additions (which were accruing interest at the rate of 9%). (*See* Carroll Aff. Opp'n Mot. Dismiss Alt. Summ. J. & Supp. Cross–Mot. Supplement Compl. Exs. 5, 10.)

Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 36).

Because the IRS takes the position that the effect of § 6511(b)(2)(B) is to limit the amount of recovery of "what would otherwise be a valid claim for refund under § 6511(a)," (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 37), the Court finds it helpful to address whether the application of §§ 7422(a) and 6511(a) to the facts of this case would permit *any* recovery before determining whether § 6511(b)(2)(B) limits the jurisdictional *amount* of such recovery.

Although the IRS originally maintained that Plaintiffs had not made "any payment" of penalties prior to filing its original Form 843, (Reply Br. Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 6 (emphasis added)), such that that original claim was "only a request for abatement," (Def.'s Sur–Reply Pls.' Cross–Mot. at 4), and could not, as a matter of law, have constituted a prior claim for refund, *see Rock Island, Ark. & La. R.R.*, 254 U.S. at 142, 41 S.Ct. 55, the IRS now acknowledges in its motion for reconsideration of *Carroll II* that $20,000 had been paid in advance of Plaintiffs' claim for refund. An initial question, then, is whether, or to what extent, this partial payment of penalties satisfies the prior claim rule. Put differently, may Plaintiffs now recover the entire $81,391.95 in penalty additions and interest they paid by virtue of having made a payment of part of that amount prior to filing their claim for refund, or does § 7422(a)'s prior claim rule limit their recovery to the $20,000 for which they had actually made a prior claim within the time constraints of § 6511(a), or is recovery barred altogether on the grounds that a taxpayer's prior claim for refund may only be considered "duly filed" within the meaning of

§ 7422(a) after the entire tax has been paid?

Plaintiffs contend, relying on *United States v. Fidelity & Deposit Co.*, 178 F.2d 753 (4th Cir.1949) (per curiam), that the Court's jurisdiction over the full amount they paid in respect of the penalty additions and interest is satisfied notwithstanding Plaintiffs' failure to make full payment prior to filing their original claim for refund with the IRS. (Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 36.) In that case, the Fourth Circuit Court of Appeals, in denying a petition for rehearing, held that the United States District Court for the District of Maryland properly had jurisdiction over the taxpayer's claim:

> As to the jurisdiction of the District Court ..., it appeared that, while the claim for refund was filed before the fourth installment of the tax was paid, the claim was denied after the payment of the installment and that suit was not filed until almost two and one-half years after the payment. To hold under such circumstances that taxpayer should be thrown out of court and told to file a new claim and then bring suit on it, when the government is denying any liability at all, would be to return to the reign of senseless technicality from which the courts have happily freed themselves.

*Fidelity & Deposit*, 178 F.2d at 754.

The IRS, on the other hand, relies on cases such as *Lefrak v. United States*, No. 94 CIV. 7668, 1996 WL 420308 (S.D.N.Y. July 26, 1996), that engraft the "full payment rule" of *Flora v. United States*, 362 U.S. 145, 177, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960) (interpreting the broad jurisdictional grant of 28 U.S.C. § 1346(a)(1) to require "full payment of the assessment before an income tax refund suit can be

maintained in a Federal District Court"),[10] into the "prior claim rule" of § 7422(a):

It is clear ... that a prospective plaintiff must satisfy the full payment rule ... through full payment of the tax assessment at issue ... prior to filing a claim with the IRS in order for that claim to constitute a duly filed claim for refund or credit as required by the prior-claim rule.

*Lefrak,* 1996 WL 420308 at *5; *see also Nelson v. United States,* 727 F.Supp. 1357, 1358 (D.Nev.1989) (holding that claim for refund could not have been "duly filed" within the meaning of § 7422(a) "[u]ntil the *entire* tax was paid," such that the court lacked jurisdiction even if partial payment were assumed to have preceded claim for refund (emphasis added)); *Douglas v. United States,* 727 F.Supp. 239, 240 (W.D.N.C.1989) ("[C]laims for refund submitted before *full* payment of assessment are not 'duly filed' under the provisions of section 7422(a) ...." (emphasis added)). *But see King v. United States,* 949 F.Supp. 787, 789–90 (E.D.Wash.1996) (holding that § 7422(a) only requires full payment prior to bringing suit, and rejecting IRS's argument that full payment must be made before filing a claim for refund with the IRS), *aff'd on other grounds,* 152 F.3d 1200, 1201 (9th Cir.1998).

■ In the opinion of the Court, Plaintiffs, who chronologically (1) made partial payment of the penalties assessed against them, (2) filed a claim for refund for the total amount of such assessment within the two-year limitations period of § 6511(a) applicable in this case, (3) paid the remainder of the assessment in full, and then (4) timely filed suit, *see* § 6532(a)(1), to recover all the monies they paid in respect of such assessment, have satisfied both the "full payment rule" and, to the extent of their partial payment preceding their administrative claim for refund, the "prior claim rule," and must be permitted to recover at least the amount of their initial partial payment. Therefore the Court rejects the rule of *Lefrak* as applied to this case, and treats the original Form 843 as (1) a claim for refund to the extent Plaintiffs had in fact made payment, and (2) a request for abatement to the extent Plaintiffs had not yet made payment. *See Etheridge v. United States,* 300 F.2d 906 (D.C.Cir.1962) (applying the same approach).

This approach respects both the full payment and prior claim rules without running afoul of any statutory language. Moreover, both parties appear to concede that it is the appropriate approach in this case. In that regard, Plaintiffs' Addendum to Form 843, at one point, requests that the IRS's assessment "be abated and,

**10.** Although Plaintiffs did not make full payment of their penalties and interest prior to filing their original claim for refund, there is no question that Plaintiffs made full payment of their penalties and interest prior to bringing this suit, as required by *Flora,* assuming the term "assessment," as used in *Flora,* was intended to encompass penalties and interest, as opposed to tax alone. Where, as here, the taxpayers have challenged the assessment of tax, penalties and interest on identical grounds, (Compl.¶¶ 42–44, 53–55), the circuits appear to be split as to whether the rule in *Flora* requires payment of the penalties and interest as a precondition to suit. *Compare Shore v. United States,* 9 F.3d 1524, 1527 (Fed.Cir.1993) ("Based on the Supreme Court's decision in *Flora,* § 1346(a)(1) confers jurisdiction on district courts ... to hear tax refund suits, so long as the taxpayer prepays the full tax assessed, *exclusive of interest and penalties.*" (emphasis added)) *with Magnone v. United States,* 902 F.2d 192, 193 (2d Cir.1990) (per curiam) ("[T]he full payment rule requires as a prerequisite for federal court jurisdiction over a tax refund suit, that the taxpayer make full payment of the assessment, *including penalties and interest.*" (citing *Flora* ) (emphasis added)).

*to the extent paid, refunded* to the taxpayer" (emphasis added). The IRS, for its part, only advanced the *Lefrak* rule in connection with its initial assertion that Plaintiffs had made *no* payment toward penalties before filing their administrative claim. Acknowledging now that Plaintiffs had paid $20,000 toward penalties before filing their administrative claim, the IRS advances only the argument that Plaintiffs' recovery is limited in amount to that sum, without further mention of the *Lefrak* rule that would ostensibly foreclose recovery altogether. Likewise, the Court thinks that the result reached in *Lefrak* (i.e., dismissal for lack of subject matter jurisdiction for failure to comply with the prior claim rule where the plaintiff had made *no* payment before filing her administrative claim for refund) would have been appropriate had Plaintiffs had paid nothing before filing their original Form 843, but that *Lefrak*'s analysis is not persuasive to extend its result to circumstances in which partial payment has preceded the filing of the claim.

The Court's rejection of the *Lefrak* rule as applied to the facts of this case means only that Plaintiffs are not jurisdictionally foreclosed from recovering the $20,000 they paid and for which they made a prior refund claim before bringing suit. Whether they may recover the remaining $61,391.95 is another question, which the Court does not think is answered by the Fourth Circuit's decision in *Fidelity & Deposit*. The Court reads *Fidelity & Deposit* as one of several cases that find a waiver of the prior claim rule where the IRS has treated a full or partial request for abatement as if it were actually a claim for refund, and denied the claim on its merits prior to the taxpayer's suit. *See King v. United States*, 152 F.3d 1200, 1201 (9th Cir.1998) (finding waiver of the prior claim rule where, in response to a request for abatement, the IRS "expressly reached the

merits of 'your claim for a refund,' disallowed it on the merits, and expressly informed the taxpayers that they were entitled to contest the issue further by filing suit in district court"); *Import Wholesalers Corp. v. United States*, 177 Ct.Cl. 493, 368 F.2d 577, 578–80 (1966) (per curiam) (finding waiver of the prior claim rule where taxpayer, in request for abatement, set forth the necessary elements for a refund, and IRS district director responded to request with a "claim for refund" form letter); *Continental Ill. Nat'l Bank & Trust Co. v. United States*, 94 Ct.Cl. 126, 39 F.Supp. 620, 623–24 (1941) (five judge panel) (finding waiver of the prior claim rule as to unpaid portion of tax where IRS considered taxpayer's partially premature Form 843 on the merits and rejected it after taxpayer had made full payment of the deficiency).

■ The Court holds that the IRS's conduct does not evince a waiver of the prior claim rule in this case. In that regard, the IRS's form letter dated September 13, 1996, specifically recites its treatment of Plaintiffs' "inquiry" of May 29, 1996, as a "request for abatement," rather than as a "claim for refund." Nor could the letter be fairly construed to consider the merits of Plaintiffs' claim the subject of *Carroll I* and *Carroll II* that they were entitled to recover the penalties they paid because the IRS's notice of deficiency was time-barred as a matter of law. Although the Court recognizes that the import of the IRS's letter is considerably ambiguous, such that the Court might otherwise be free to assign to this letter "whatever meaning it deems requisite to do justice in the premises," *Southeast Bank of Orlando v. United States*, 230 Ct.Cl. 277, 676 F.2d 660, 665–66 (1982), it is Plaintiffs who affirmatively contend that "the September 13, 1996 correspondence did not relate to ... penalty items covered by the Form 843

Claim for Refund." (Pls.' Mem. Supp. Cross–Mot. Supplement Compl. at 3; *see* Carroll Aff. Opp'n Mot. Dismiss Alt. Summ. J. & Supp. Cross–Mot. Supplement Compl. ¶¶ 3–4.) Because the IRS neither treated Plaintiffs' original Form 843 as a request for refund nor considered the penalty items "on the merits" prior to Plaintiffs' suit, the conduct of the IRS does not constitute a waiver of the prior claim rule as to the $61,391.95 request for abatement.

Plaintiffs alternatively contend, relying on *Crenshaw v. Hrcka,* 237 F.2d 372 (4th Cir.1956), and *Newton v. United States,* 143 Ct.Cl. 293, 163 F.Supp. 614 (1958) (four judge panel), that their Amended Forms 843–1996 and 843–1998 cured any failure to make full payment prior to bringing a claim for refund, since "a defective claim can be cured by the filing of a proper refund claim even though the proper claim is filed beyond the statutory period," and that under this theory, "[i]t matters not that the original claim was filed prior to the time that full payment of the amount in issue was made." (Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 37–38); *see also United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941) ("[A] notice fairly advising the Commissioner of the nature of a taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with the formal regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment after the lapse of the statutory period").

The Court need not decide whether Amended Form 843–1996 should be construed to remedy Plaintiffs' failure to comply with the prior claim rule with respect to payments made after June 4, 1996. Assuming without deciding that Plaintiffs' Amended Form 843–1996 properly brings Plaintiffs' otherwise untimely claim for refund of the additional $61,391.95 within the statutory limitation of § 6511(a), the IRS is correct that the effect of § 6511(b)(2)(B) is to limit the amount of recovery of what would otherwise be a valid claim for refund. *Snyder v. United States,* 616 F.2d 1187, 1188–89 (10th Cir.1980); *see Oropallo v. United States,* 994 F.2d 25, 27 (1st Cir.1993) (per curiam) (same conclusion regarding companion provision § 6511(b)(2)(A)). Whether the two-year "look-back" period of § 6511(b)(2)(B) is applied to the date Plaintiffs filed their original Form 843 on June 4, 1996, or to the date they filed their Amended Form 843–1996 on September 13, 1999, *see Radin v. United States,* 702 F.Supp. 38, 40–41 (D.Conn.1988) (applying "look-back" period of counterpart § 6511(b)(2)(A) both to date of informal claim and to date informal claim was perfected), Plaintiffs would recover none of the remaining $61,391.95. As applied to the former date, Plaintiffs' recovery would be limited to the $20,000 that the Court has already determined they are entitled to recover; as applied to the latter, Plaintiffs would recover nothing, because they paid nothing between September 13, 1997 and September 13, 1999.

■ Plaintiffs could only recover the $61,391.95, or a portion thereof, if the look-back window of § 6511(b)(2)(B) were applied to the date Plaintiffs filed their August 1998 Form 843 on August 19, 1998. Yet the August 1998 Form 843 does not advance any argument as to why Plaintiffs should be entitled to a refund of the $81,391.95 they paid in respect of the penalty additions. It asserts the entirely different ground that interest should be recalculated because the IRS had mis-allocated certain of Plaintiffs' payments to penalties owed, rather than to taxes and interest. Because the relief requested in

Plaintiffs' August 1998 Form 843 is entirely different from that requested in Plaintiffs' original Form 843, and because the IRS "is not expected to be Sherlock Holmes" in determining the basis for a claim for refund, *Weisbart v. United States Dep't of Treas.*, 222 F.3d 93, 99 (2d Cir.2000), the look-back period cannot be applied to the date Plaintiffs filed their August 1998 Form 843. Nor, as Plaintiffs suggest, can Amended Form 843–1998 amend the August 1998 Form 843 in such a way as to retroactively "[c]onsolidate therewith the previously filed Claim for Refund and Request for Abatement dated May 29, 1996," as it purports to do. As explained by the Second Circuit, " 'a claim seeking refund upon one asserted fact situation may not be amended out of time so as to require an investigation of matters not [originally] germane.' " *Id.* at 98–99 (quoting *Sappington v. United States*, 408 F.2d 817, 819 (4th Cir.1969)).

In summary, the Court grants the IRS's motion to reconsider *Carroll II*, but only on the grounds that § 6511(b)(2)(B) jurisdictionally limits Plaintiffs' recovery to $20,000, although the Court in reaching that conclusion has also considered the jurisdictional arguments raised in the IRS's own motion to dismiss, or in the alternative, for summary judgment. The resolution of this motion means that Plaintiffs are entitled to judgment limited in amount to $20,000 under Count IX of the Complaint for the reasons identified in Count III.

## B. IRS's Motion To Dismiss, Or In The Alternative, For Summary Judgment

The IRS moves, pursuant to Rules 12(b)(1), 12(b)(6), and 56(c) of the Federal Rules of Civil Procedure, for an order dismissing the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted, or alternatively, for summary judgment. Because both parties have submitted evidentiary materials in their submissions on this motion, which have been considered by the Court, the Court will treat Defendants' motion exclusively as one for an order dismissing the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, or alternatively, for summary judgment pursuant to Rule 56(c).

The Court addresses the grounds for the relief sought in the IRS's motion by reference to each count of the Complaint. *See* discussion *infra* Parts II.B.2–9. Where the Court's resolution of the motion as to a particular count is on summary judgment grounds, as opposed to jurisdictional grounds, the Court employs the standards discussed in Part II.B.1.

### 1. Summary Judgment Standards

The legal principles employed by the Court when ruling upon a motion for summary judgment are well-established. Summary judgment may be granted only when it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The moving party bears the initial burden "of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). However, where the non-moving party will bear the burden of proof at trial, the moving party may discharge this initial burden "without supporting affidavits," Fed.R.Civ.P. 56(b), or any other evidence affirmatively negating the non-moving party's position if, after adequate time for discovery, an essential element of the non-moving party's case

suffers from a complete absence of evidence. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Wiradihardja v. Bermuda Star Line, Inc.*, 802 F.Supp. 989, 992 & n. 4 (S.D.N.Y.1992).

Once the moving party has come forward with support demonstrating that no genuine issue of material fact remains to be tried, the non-moving party "must come forward with affidavits, depositions, or other sworn evidence as permitted by Fed. R.Civ.P. 56, setting forth specific facts showing that there exists a genuine issue of material fact." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996). In reviewing these materials, the Court is "required to draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.* The substantive law governing the case will determine those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (emphases omitted). Nor will "[c]onclusory allegations ... suffice to create a genuine issue. There must be more than a 'scintilla of evidence,'" *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505), and "more than 'some metaphysical doubt as to the material facts.'" *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir.1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Ra-*

*dio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Put another way, "[t]he non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, ... or defeat the motion through mere speculation or conjecture." *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations and internal quotations omitted).

### 2. Counts I and II

Whether the relief sought by Plaintiffs under Counts I and II is conceptualized as a challenge to Winer's authority to represent the Stevens partnership in the Tax Court, or as a statute of limitations challenge to the IRS's issuance of an FPAA, or as a violation of Plaintiffs' due process rights, the IRS is correct that 26 U.S.C. § 7422(h) deprives the Court of jurisdiction to adjudicate Plaintiffs' claims, (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 12–18), assuming the exceptions to § 7422(h) are inapplicable and that no partnership items have converted into non-partnership items (*see* discussion *supra* Part I.B). *Chimblo*, 177 F.3d at 125 (holding that statute of limitations defense to issuance of an FPAA is a partnership item that must be raised at the partnership level); *Kaplan II*, 133 F.3d at 473–74 (same conclusion, where TMP was alleged to lack authority to execute extension of limitations period for issuance of FPAA); *Hirshfield*, 2001 WL 579783 at *7–8 (holding that Winer's authority to act on behalf of Stevens before the Tax Court or to consent to extend the limitations period for issuance of FPAA were partnership items under § 7422(h) such that the court lacked jurisdiction to entertain plaintiffs' claim for refund on that basis); *Clark*, 68 F.Supp.2d at 1342–46 (same conclusion as to Winer's representation of Masters Recycling Associates, even where government's dealings were alleged to violate due process); *Klein*

*v. United States,* 86 F.Supp.2d 690, 692–98 (E.D.Mich.1999) (same).

Plaintiffs contend, however, that this Court has jurisdiction over a computational error pursuant to § 6230(c)(1)(A)(ii), which is one of the exceptions to § 7422(h). (Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 21.) Plaintiffs also contend, relying on *Alexander v. United States,* 44 F.3d 328 (5th Cir.1995), that any items that were partnership items have been converted to non-partnership items by reason of the conclusion of the Tax Court proceedings (*id.* at 19), or alternatively, that any items that were partnership items have been converted to non-partnership items pursuant to § 6231(b)(1)(D) by reason of the IRS's failure to provide notice of events set forth in § 6223(e), which, by reference to § 6223(a), includes the issuance of an FPAA (*id.* at 18–19). The Court addresses these arguments in turn, and concludes that while jurisdiction is proper over the alleged computational error, there is no basis for concluding that Plaintiffs' partnership items have converted to nonpartnership items.

### a. Jurisdiction Is Proper over the Alleged Computational Error.

In Paragraph 11 of Plaintiffs' Addendum to Form 1040X, filed June 4, 1996, Plaintiffs claim, in relevant part, that "the tax due for 1982 should have been computed by income averaging which would have resulted in a total tax of $36,019, $2,225 less than reflected on the adjusted return." The IRS does not argue that this claim would not constitute a computational error. Instead, the IRS contends that the claim in Plaintiffs' Form 1040X is not before the Court because it was never raised in the Complaint, that only the August 1998 Form 843 "properly" sets forth a claim for refund alleging an erroneous computation, and that the IRS's allowance of that claim

by letter dated January 4, 2000, moots the issue. (Reply Br. Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 5–6.)

■ In the opinion of the Court, whether the IRS allowed the claim for refund contained in the August 1998 Form 843 is irrelevant here, since that claim (seeking reallocation of Plaintiffs' tax payments and recalculation of interest based on such reallocation) is completely unrelated to Plaintiffs' instant claim that the tax due should have been computed by income averaging. Instead, the relevant inquiries are whether Plaintiffs' Form 1040X, filed June 4, 1996, properly sets forth a claim for refund, and if so, whether that claim is alleged as a basis for recovery in the Complaint. The Court answers both questions in the affirmative. The IRS's own regulations appear to require that Plaintiffs' claim for refund of tax qua tax be set forth on a Form 1040X. 26 C.F.R. § 301.6402–3(a)(2), (5). Accordingly, Plaintiffs' claim for refund based upon an erroneous computation of tax liability was validly presented to the IRS on June 4, 1996, even if such claim—made in relation to another argument concerning the refund of interest and penalties—was, as characterized by the IRS, "obliquely alleged." (Reply Br. Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 5–6.) The Court determines, further, that Plaintiffs' claim for recovery of tax based on *computational error* was sufficiently incorporated into the Complaint by reference, as follows:

> On or about May 29, 1996, [P]laintiffs filed a Form 1040X claim for refund with the [IRS] Center at Holtsville, New York, of refund of federal income tax paid for 1982 in the amount of $32,138, together with interest and administrative costs as allowed by law. A copy of this claim is attached hereto ... and made a part hereof.

(Compl. ¶ 52.) This allegation is sufficient to satisfy the requirements of notice pleading in federal court. *See Arndt v. United States,* 493 F.Supp. 552, 553 (S.D.Tex.1980) (considering assertions in Forms 843 that were incorporated into the complaint by reference); *cf. Matthews v. United States,* 456 F.2d 395, 396–97 (5th Cir.1972) (reversing dismissal of complaint that had incorporated allegations by reference to administrative claim previously filed with the United States Army). Because it appears that the computational error alleged in Paragraph 11 of Plaintiffs' Addendum to Form 1040X is properly before the Court, both as a matter of jurisdiction and pleading, and because the parties' submissions do not address this claim on summary judgment grounds, there is no basis for its dismissal at this stage of the proceedings.

**b. Jurisdiction May Not Be Exercised on the Theory That Partnership Items Converted to Nonpartnership Items Either at the Conclusion of the Tax Court Proceedings or Upon Winer's Settlement with the IRS.**

Plaintiffs argue, relying on *Alexander,* that § 7422(h) poses no jurisdictional bar because the items at issue converted to nonpartnership items at the conclusion of the partnership level proceedings. (Pls.' Mem. Opp'n Def.'s Mot. Dismiss at 19.) In *Alexander,* the IRS had issued an FPAA to a partnership increasing the plaintiff limited partner's tax liability. 44 F.3d at 329. After the limited partner entered into an agreement settling his increased liability, he became aware that the IRS's issuance of the FPAA was time-barred in the first instance, whereupon he filed a claim for refund with the IRS and then filed an action for recovery of tax in federal district court in timely fashion. *Id.* at 329–30. The Fifth Circuit, concluding that the partnership items the subject of plaintiff's claim for refund had converted

into non-partnership items pursuant to § 6231(b)(1)(C) by reason of the plaintiff's settlement with the IRS, rejected the IRS's argument that the plaintiff's action was jurisdictionally barred under § 7422(h):

In this case, the refund claimed was at one time attributable to partnership items, that is, to the adjustments called for in the FPAA to the [partnership's] return. The question is whether these items remained partnership items after Alexander and the Service entered into a settlement agreement. *Because the purpose of section 7422(h) is evidently to prevent an individual partner's refund action from interfering with the partnership-level determination of partnership items, that bar becomes unnecessary when the partnership-level proceeding has in some sense concluded.* Accordingly, section 6231 calls for the conversion of partnership items into nonpartnership items on the happening of certain events. Relevant to this case is section 6231(b)(1)(C), which converts partnership items into nonpartnership items when "the [IRS] enters into a settlement agreement with the partner with respect to such items."

Therefore, execution of a valid settlement agreement between Alexander and the Service would convert partnership items into nonpartnership items, thereby lifting the jurisdictional bar of section 7422(h).

*Id.* at 331 (citation omitted) (emphasis added).

It is evidently Plaintiffs' position either (1) that the italicized language in the passage quoted above supports the conclusion that Stevens's partnership items converted into nonpartnership items at the close of the Tax Court proceedings, or (2) that Winer's settlement with the IRS converted Stevens partnership items into nonpart-

nership items pursuant to § 6231(b)(1)(C). The Court has not been directed to or discovered any authority that would support Plaintiff's reading of *Alexander* as to the former position, and is not otherwise inclined to adopt that reading of *Alexander* as its own.[11] The latter position, however, finds support in *Williams v. United States*, 974 F.Supp. 1206 (C.D.Ill.1997), in which the United States District Court for the Central District of Illinois, quoting the language in *Alexander* italicized above, concluded that a TMP's settlement with the IRS constituted a settlement with the partnership, such that the partnership items even of a nonsettling limited partner were converted to nonpartnership items, thus lifting the jurisdictional bar of § 7422(h) with respect to that nonsettling limited partner's suit in district court. *Id.* at 1208–09.

On the other hand, the court in *Monti v. United States*, 976 F.Supp. 157 (E.D.N.Y. 1997), interpreted *Alexander* in a way that cannot be reconciled with *Williams:*

> The Court does not dispute the holding in *Alexander* that if the partners settle with the IRS during the TEFRA proceeding, *their* tax liability ceases to be a partnership item and becomes a nonpartnership item. Once the partnership item converts to the nonpartnership item after the settlement is consummated, the district court does have jurisdiction to hear a taxpayer['*]s refund claim to apply the terms of that settlement if the IRS fails to honor it. Such is not the case in this action. The plaintiffs have not argued, nor could they, that *they* settled with the IRS. Rather they contend that they did not settle . . . .

Nothing in *Alexander* . . . should be construed to allow a *nonsettling* partner in a TEFRA proceeding to later apply for tax credit on the basis of *another* partner's settlement.

*Id.* at 164 (citation omitted) (emphasis added).

■ Although the decision in *Monti* was reversed by the Second Circuit in *Monti II*, which quoted the language of *Alexander* italicized above, *id.* at 84, the reversal was on other grounds. More importantly, certain language in *Monti II* implicitly rejects the conclusion reached in *Williams* in favor of the analysis in *Monti:*

> When a partner settles with the IRS with respect to an item, that item ceases to be a "partnership item" and becomes a "nonpartnership item" *with respect to the settling partner.* See I.R.C. § 6231(b)(1)(C).

*Monti II*, 223 F.3d at 80 (emphasis added); *see also* Accordingly, the Court concludes that it may not exercise jurisdiction over Plaintiffs' claims for refund on the theory that partnership items converted to nonpartnership items at the close of the partnership level proceedings or by virtue of Winer's settlement with the IRS.

### c. Jurisdiction May Not Be Exercised on the Theory That Partnership Items Converted to Nonpartnership Items Pursuant to § 6231(b)(1)(D).

Plaintiffs argue, in the alternative, that any items that were partnership items have been converted to non-partnership items pursuant to § 6231(b)(1)(D) by reason of the IRS's failure to provide notice of events set forth in § 6223(e), which, by

---

**11.** It is hard to imagine what purpose would be served by interpreting § 7422(h)'s jurisdictional bar to raise automatically at the close of the partnership-level proceedings. Indeed, the goal of uniformity accomplished by channeling all challenges to the adjustment of the partnership's tax liability into a single, unified proceeding would be undermined completely if every partner's right to subsequently challenge the partnership-level adjustments in an individual refund action became unfettered by this "conversion."

reference to § 6223(a), includes the issuance of an FPAA. Specifically, Plaintiffs contend that the IRS "effectively failed to provide notice of the FPAA to Plaintiffs because it was provided to Winer, as TMP, whom Defendant knew to be unauthorized to be serve as such and whom Defendant knew had a conflict of interest with the Stevens partners." (Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 18.)

The IRS counters that the FPAA was in fact mailed to the TMP on June 5, 1989, and by certified mail to Plaintiffs on July 3, 1989, such that Plaintiffs had actual notice of the FPAA regardless of whether Winer was authorized to serve as TMP. (Reply Br. Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 3.) As evidence of these facts, the IRS submits a photocopy of an FPAA that is addressed to Plaintiffs, dated July 3, 1989, and which recites "DATE FPAA MAILED TO TAX MATTERS PARTNER: 06–05–89." (U.S.' Local R. 56.1 Stmt. Facts ¶ e & Ex. 1.) Yet this FPAA also recites that it is for "TAX YEAR ENDED: 1983," (*id.*), and Plaintiffs deny that it "is anything other than the FPAA for the year ending December 31, 1983." (Pls.' Resp. U.S.' Local R. 56.1 Stmt. Facts ¶ E.) Further, the IRS fails to offer any explanation in reply as to why the FPAA bears that date.

If the burden were on the IRS to prove the absence of jurisdiction, then the FPAA annexed to its motion papers would be insufficient to carry the day, since there is no clear indication that this FPAA even pertains to the relevant tax year. However, "when a bona fide dispute is raised as to the presence of federal jurisdiction it is the affirmative burden of the party invoking such jurisdiction ... to proffer the necessary factual predicate." *London v. Polishook*, 189 F.3d 196, 199 (2d Cir.1999). Therefore the burden is on Plaintiffs to prove in the first instance that jurisdiction exists where, as here, § 6231(b)(1)(D) is asserted as the basis for the non-applicability of the jurisdictional bar of § 7422(h). *See Kaplan v. United States*, No. 95 C 1294, 1997 WL 156556, at *1, *3 (N.D.Ill. Apr.1, 1997), *aff'd*, 133 F.3d 469 (7th Cir. 1998).

■ Plaintiffs have failed to meet that burden. That is to say, they have not come forward with evidence demonstrating that the IRS failed to satisfy the notice requirements of § 6223 as would permit § 6231(b)(1)(D) to defeat the jurisdictional bar of § 7422(h). In the first place, Plaintiffs have not shown that they were even entitled to individualized notice from the IRS. As explained *supra* Part I.A, in partnerships exceeding 100 members, the IRS is only required to mail the FPAA to individual partners who own at least one percent of the partnership within 60 days after the FPAA is mailed to the TMP. Yet no evidence before the Court tends to show that Stevens consisted of 100 or fewer members or that Plaintiffs owned at least one percent of Stevens, such as would demonstrate that Plaintiffs were entitled to individualized notice of the FPAA directly from the IRS.

If, on the other hand, Plaintiffs were small-share partners, such that the IRS's issuance of the FPAA upon the Stevens TMP would constitute constructive notice upon them, Plaintiffs have not come forward with evidence that the Stevens TMP (be it Winer or Hirshfield) did *not* receive the FPAA. Instead, they allege that Winer *did* receive the FPAA, (Compl.¶ 29), and are silent as to Hirshfield.

Finally, and perhaps most tellingly, Plaintiffs have never affirmatively alleged, much less set out in an affidavit, that they did *not* receive *actual* notice of the FPAA, either (1) through individualized notice directly from the IRS, or (2) through Winer.

Instead, Plaintiffs merely state, respectively, (1) that the document annexed to the IRS's motion papers pertains to the wrong calendar year, and (2) that the IRS "*effectively* failed to provide notice of the FPAA to Plaintiffs because it was provided to Winer, as TMP, whom Defendant knew to be unauthorized to be serve as such" (emphasis added), while remaining silent as to whether Winer actually forwarded a copy of the FPAA to them. In short, Plaintiffs have failed to establish the factual predicate as would permit the Court to exercise jurisdiction on the theory that partnership items converted to nonpartnership items pursuant to § 6231(b)(1)(D).

### 3. Count III

The IRS is entitled to summary judgment on Count III. Although the Court granted in part Plaintiffs' motion for partial summary judgment on Count IX (relating to negligence and valuation overstatement penalties under §§ 6653(a) and 6659 assessed pursuant to notice of deficiency procedures) for the reasons asserted in Count III (that the notice of deficiency was time barred as a matter of law pursuant to § 6229(d)), Plaintiffs could not be entitled to recovery on Count III itself, since the evidence submitted in connection with Plaintiffs' motion for partial summary judgment shows that the tax and statutory interest the subject of this Count III (as opposed to the penalties the subject of Count IX) were not in fact assessed pursuant to notice of deficiency procedures. Nor does it appear that tax and statutory interest are required to be assessed pursuant to notice of deficiency procedures under the circumstances of this case. *See McBride v. United States*, No. C 97–2887, 1998 WL 480195, at *4 (N.D.Cal. Aug.11, 1998), *aff'd mem.*, 211 F.3d 1274 (9th Cir. 2000); *Olson v. United States*, 37 Fed. Cl. 727, 732 (1997), *aff'd*, 172 F.3d 1311, 1315 n. 1, 1317 (Fed.Cir.1999). Because, as a matter of law, § 6229(d) poses no limitations bar to the assessments challenged under Count III of the Complaint, the IRS is entitled to summary judgment on that count.

### 4. Count IV

Under Count IV of the Complaint, Plaintiffs claim that because the Tax Court did not find the Stevens partnership to have been engaged in a tax-motivated transaction within the meaning of 26 U.S.C. § 6621(c)(3), there is no basis for imposition of tax-motivated interest pursuant to § 6621(c).[12] Section § 7422(h) po-

---

**12.** Section 6621(c) provides, in relevant part, as follows:

(1) In general.—In the case of interest payable under section 6601 with respect to any substantial underpayment attributable to tax motivated transactions, the rate of interest established under this section shall be 120 percent of the underpayment rate established under this section.

(2) Substantial underpayment attributable to tax motivated transactions.—For purposes of this subsection, the term "substantial underpayment attributable to tax motivated transactions" means any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000.

(3) Tax motivated transactions.—

(A) In general.—For purposes of this subsection, the term "tax motivated transaction" means—

(i) any valuation overstatement (within the meaning of section 6659(c)), . . . .

. . . and

(v) any sham or fraudulent transaction.

26 U.S.C.A. § 6621(c) (West 1989). Section 6659(c), provides, in turn, that "there is a valuation overstatement if the value of any property, or the adjusted basis of any property, claimed on any return is 150 percent or more of the amount determined to be the correct amount of such valuation or adjusted basis (as the case may be)." *Id.* § 6659(c).

ses no jurisdictional bar to this claim because § 6621(c) interest is an affected item, not a partnership item. *Affiliated Equip. Leasing II v. Commissioner,* 97 T.C. 575, 577–78, 1991 WL 241149 (1991). Nor does the IRS aver that this claim is jurisdictionally barred. Rather, the IRS makes two arguments as to why it is entitled to summary judgment on Count IV.

***a. Provizer Is Not Entitled to Stare Decisis Effect on the Question of Whether Stevens Was Engaged in a Sham Transaction, and the IRS Has Not Otherwise Produced Evidence Supporting Its Determination to That Effect.***

First, it is the IRS's position that Plaintiffs are bound under the doctrine of stare decisis to the Tax Court's decision in *Provizer v. Commissioner,* 63 T.C.M. (CCH) 2531 (1992), *aff'd mem.,* 996 F.2d 1216 (6th Cir.1993), "that lease transactions in Plastics Recycling programs such as Stevens are a 'sham'" within the meaning of § 6621(c)(3)(A)(v). (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 24.) "A transaction is a sham if it is fictitious or if it has no business purpose or economic effect other than the creation of tax deductions." *DeMartino v. Commissioner,* 862 F.2d 400, 406 (2d Cir.1988). The IRS describes Stevens as "one of seven 'substantially identical' Plastics Recycling programs ... which purported to lease Sentinel EPS [(Expanded Polystyrene)] Recyclers" and characterizes *Provizer* as a "test case" for such Plastics Recycling Programs. (U.S.' Local R. 56.1 Stmt. Facts ¶¶ g, h.) In *Provizer,* the Tax Court found that "the Plastics Recycling leasing program is a sham transaction," such that it was tax motivated "by definition" under § 6621(c)(3)(A)(v). 63 T.C.M. (CCH) at 2554. Therefore, according to the IRS, "stare decisis applies to bar relitigation" of that issue, (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 24), at least "in

the absence of any significant distinguishing facts" between the leasing transactions at issue in *Provizer* and those at issue here. (Reply Br. Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 12.)

The IRS's reliance on stare decisis effect of *Provizer* must be rejected. In the first place, as argued by Plaintiffs, (Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 25 n. 1), the partnership at issue in *Provizer* involved expanded polyethylene (EPE) Sentinel recyclers, while Stevens involved expanded polystyrene (EPS) Sentinel recyclers. Although that distinction may seem insignificant, the Tax Court distinguished between the two kinds of recyclers and indicated that *Provizer* was only a lead case for the former:

> This case has been tried and briefed as a lead case for limited partners in programs involving the leasing of Sentinel Recyclers which sometimes are referred to as Plastics Recycling programs. Plastics Recycling programs involved the promotion of expanded polyethylene (EPE) recyclers during 1981 and expanded polystyrene (EPS) recyclers during 1982. Petitioners in the instant case are only representative of investors in 1981 partnerships and the machines are only representative of Sentinel EPE Recyclers.

63 T.C.M. (CCH) at 2532. That conclusion is supported by the Tax Court's decision in *Davenport Recycling Associates v. Commissioner,* 76 T.C.M. (CCH) 562 (1998), *aff'd,* 220 F.3d 1255 (11th Cir.2000), which describes different cases—that do not appear to have been decided on their merits—as the test cases for the EPS recyclers:

> *Provizer* ... has been uniformly viewed as the lead case involving Sentinel EPE recyclers.

During 1992 and 1993 [the IRS] prepared four partnership cases as test cases (the SAB cases) for the Sentinel EPS recycler. On August 2, 1993, the day the trial of the SAB cases was scheduled to begin, the TMP of these partnerships conceded all partnership adjustments in full in open court. As a result of the TMP's concessions, decisions were entered in favor of [the IRS] in the SAB test cases.

76 T.C.M. (CCH) at 574 (footnote omitted).

Furthermore, even if *Provizer* were the "lead case" for the kind of recycler leasing transactions at issue here, the decision of the Tax Court in *Provizer* would not be entitled to stare decisis effect in this Court any more than the decision of a federal district court sitting in Illinois would be entitled to stare decisis effect in the United States Court of Appeals for the Second Circuit. *See Champion Spark Plug Co. v. Gyromat Corp.*, 603 F.2d 361, 367 n. 12 (2d Cir.1979). In that regard, every case cited by the IRS in support of its contention that "stare decisis applies when ... a court is faced with repetitive litigation involving the Federal income tax consequences of investments in related tax shelter partnerships," (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 24), involves either (1) the Tax Court giving stare decisis effect to a prior Tax Court decision on similar or identical grounds, (2) the Tax Court giving stare decisis effect to a prior decision of a circuit court of appeals on similar or identical grounds where an appeal in the case before it would lie to that circuit court of appeals, or (3) a circuit court of appeals giving stare decisis effect to one of its prior decisions on similar or identical grounds. *See Simmons v. Union News Co.*, 341 F.2d 531, 532–33 (6th Cir. 1965); *Leishman v. Radio Condenser Co.*, 167 F.2d 890, 892 (9th Cir.1948); *Pearlman v. Commissioner*, 69 T.C.M. (CCH) 2460, 2462–63 (1995); *Kott v. Commission-er*, 69 T.C.M. (CCH) 2455, 2456–57 (1995); *Eisenberg v. Commissioner*, 69 T.C.M. (CCH) 2446, 2448 (1995); *Decker v. Commissioner*, 69 T.C.M. (CCH) 1756, 1758 (1995); *Brown v. Commissioner*, 67 T.C.M. (CCH) 2101, 2102 (1994); *Kozlowski v. Commissioner*, 66 T.C.M. (CCH) 754, 755 (1993), *aff'd mem.*, 70 F.3d 1279 (9th Cir.1995); *Walsh v. Commissioner*, 66 T.C.M. (CCH) 704, 705 (1993), *rev'd in part on other grounds mem.*, 72 F.3d 136 (9th Cir.1995); *Golsen v. Commissioner*, 54 T.C. 742, 756–57, 1970 WL 2191 (1970), *aff'd*, 445 F.2d 985 (10th Cir.1971). By contrast, this Court has never rendered an opinion, nor is it aware of any opinion of the Second Circuit, holding that a plastics recycling leasing program is a sham transaction within the meaning of § 6621(c)(3)(A)(v), such as might permit application of the doctrine of stare decisis here.

 In the opinion of the Court, the IRS's argument must be reduced to the idea that the Tax Court's decision in *Provizer* has illustrative or persuasive value as a case not meaningfully distinguishable on the facts, such that the Court should follow *Provizer*'s application of law to the substantially identical facts in this case and conclude that Plaintiffs were engaged in a tax motivated transaction. *See Klein v. United States*, 94 F.Supp.2d 838, 846–48 (E.D.Mich.2000) [hereinafter *Klein II* ] (concluding that the Tax Court's opinion in *Provizer* may have illustrative or persuasive value, but not precedential value). The problem with entertaining even that argument on the present record, however, is that the IRS has not submitted any evidentiary material as would demonstrate either the nature of the Stevens Sentinel EPS Recycler leasing transactions or the factual similarity between such transactions and the EPE Recycler leasing transactions at issue in *Provizer*. Nor has the

IRS introduced evidence that the Stevens partners were among those who agreed to be bound by the outcome of the decision in *Provizer* (or any other test case). *See* 63 T.C.M. (CCH) at 2532. And Plaintiffs, for their part, have not stipulated that the facts concerning the underlying Stevens transactions were substantially the same as the Tax Court found in *Provizer,* or that their investment in Sentinel recyclers was similar or identical to the investment described in *Provizer,* as did the taxpayers in *Pearlman,* 69 T.C.M. (CCH) at 2462–63 & n. 3, *Kott,* 69 T.C.M. (CCH) at 2456–57 & n. 3, and *Eisenberg,* 69 T.C.M. (CCH) at 2447–48 & n. 3. *See also Brown,* 67 T.C.M. (CCH) at 2102 (giving stare decisis effect to prior Tax Court case where taxpayers conceded, by defaulting on IRS's motion for summary judgment, that their transactions were conducted in the same way as the transactions found to be tax motivated in the prior case); *Kozlowski,* 66 T.C.M. (CCH) at 755 ("Since petitioners concede that their transactions ... were identical to those in [the case to which the Tax Court gave stare decisis effect], additional interest under section 6621(c) is applicable here."); *Walsh,* 66 T.C.M. (CCH) at 705 ("[T]he parties have stipulated the entire record in [the case to which the Tax Court gave stare decisis effect] into the record in this case.").

In short, (1) there was no adjudication by the Tax Court that the Stevens Sentinel EPS Recycler leasing transactions were a "sham" within the meaning of § 6621(c)(3)(A)(v); (2) *Provizer* is not entitled to stare decisis effect on that issue; (3) the IRS has not provided evidence as to the nature of the Stevens transactions as would demonstrate that they were a sham as a matter of law; and (4) Plaintiffs have not obliged the IRS by conceding the point, though they have produced no evidence tending to show that the Stevens transactions were *not* a sham. Under

these circumstances, the IRS has failed to discharge its initial burden as movant to come forward with evidence to demonstrate the absence of a genuine issue of material fact on the question of whether the Stevens transactions were a sham as would entitle the IRS to judgment as a matter of law on Count IV of the Complaint. *See Hirshfield,* 2001 WL 579783, at *17 & n. 6; *Clark v. United States,* No. 1:98–CV–1425, 2001 WL 306498, at *6 (N.D.Ga. Feb.28, 2001) [hereinafter *Clark II* ].

■ In reaching that conclusion, the Court is mindful that an IRS tax assessment is presumptively correct such that the taxpayer bears the burden in a refund action to demonstrate his entitlement to the recovery of taxes paid. *Apollo Fuel Oil v. United States,* 195 F.3d 74, 76 (2d Cir.1999) (per curiam); *United States v. McCombs,* 30 F.3d 310, 318 (2d Cir.1994). Therefore Plaintiffs would ordinarily have the ultimate burden of proof at trial to demonstrate that the Stevens transactions were not a sham. *See DeMartino,* 862 F.2d at 406. Given that ultimate burden, it could be argued that under the summary judgment posture of this case, the IRS has discharged its initial burden as movant by pointing to Plaintiffs' complete absence of evidence on that issue. *See* discussion *supra* Part II.B.1; *Mulholland v. United States,* 16 Cl.Ct. 252, 260 (1989).

■ Yet under the rule of *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976), where the IRS can show no foundation for the challenged assessment, no presumption of correctness applies, and the assessment is "not properly subject to the usual rule with respect to the burden of proof in tax cases." *Id.* at 441, 96 S.Ct. 3021. Thus, until the IRS provides some evidence of its own sufficient to invoke a presumption of

correctness as to its determination that the Stevens partnership was engaged in transactions that were a sham, the burden of proof on that issue remains with the IRS. *See Schaffer v. Commissioner*, 779 F.2d 849, 857–59 (2d Cir.1985).

### b. On a "Valuation Overstatement" Theory, the IRS Is Entitled to Summary Judgment on Plaintiffs' Claim for Recovery of Tax–Motivated Interest.

The IRS's second argument as to why it is entitled to summary judgment on Count IV is that Plaintiffs "are bound by [Stevens's] clear concession [in Tax Court] that there was a valuation overstatement" within the meaning of § 6621(c)(3)(A)(i), (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 23–24), which is another basis for the imposition of tax-motivated transaction interest. Presumably, the February 1994 Decision of the Tax Court, entered pursuant to a settlement with Winer, is the evidence relied upon by the IRS to demonstrate Stevens's "concession." Plaintiffs contend, relying on the conduct of Winer and/or the IRS described *supra* Part I.C, that "any 'concession by Stevens' was in a proceeding in which, contrary to TEFRA, Plaintiffs were effectively unrepresented." (Pls.' Mem. Law Opp'n Def.'s Mot. Dismiss Alt. Summ. J. at 24 n. 6.)

The February 1994 Decision of the Tax Court is simply a chart showing the values of Stevens's partnership items as claimed on the Stevens partnership return, on the one hand, and the values of those items as adjusted pursuant to the stipulated-to determination of the Tax Court, on the other. For the 1982 tax year, the adjusted values for each of Stevens's partnership items is zero dollars. Plaintiffs are correct that this February 1994 Decision contains no legal determination by the Tax Court that the Stevens partnership was engaged in a tax-motivated transaction. Nor would the stipulated decision constitute a concession by Winer or Stevens as to the legal conclusion that there was a valuation overstatement within the meaning of § 6621(c)(3)(A)(i).

■ That does not mean, however, that Plaintiffs are not stuck with the adjusted valuations contained in the February 1994 Decision *as a matter of fact*. Plaintiffs' protestations to the contrary, they are bound by the February 1994 Decision as constructive parties. 26 U.S.C. § 6226(c)(1); *Conway*, slip op. at 19. Although Plaintiffs complain that pursuant to § 6226(b)(1), Winer's petition to the Tax Court precluded them, or any other limited partner, from filing a petition in response to the FPAA, (Compl.¶ 34), Plaintiffs could nonetheless have elected to participate in the Tax Court proceeding, § 6226(c)(2); Tax Ct. R. 245(b), but did not avail themselves of that opportunity.

■ The Plaintiffs' problem in avoiding summary judgment on Count IV is that, quite apart from the absence of a Tax Court determination or concession that Stevens was engaged in a tax-motivated transaction, the numbers in the February 1994 Decision, of their own force, "conclusively establish[ ]" that there was a valuation overstatement within the meaning of § 6621(c)(3)(A)(i). *See Conway*, slip op. at 18–19. In that regard, the February 1994 Decision's valuation of each of Stevens's partnership items at zero meets § 6621(c)(3)(A)(i)'s definition of a "valuation overstatement" (by reference to § 6659(c)) as a claimed value "150 percent or more of the amount determined to be the correct amount," such that the penalty interest rate of § 6621(c) properly applies. *See Gilman v. Commissioner*, 933 F.2d 143, 150–51 (2d Cir.1991) ("[W]here the taxpayer's basis has been reduced to zero, . . . [t]he percent of 'overvaluation' above

zero is infinite, which is literally more than 250 percent . . . .").

Even if the February 1994 Decision were not "conclusive" on this question, it constitutes sufficient evidence of valuation overstatement to invoke a presumption of correctness as to the IRS's determination that the penalty rate of interest applies. Therefore the burden of proof at trial would be on Plaintiffs, who have, on summary judgment, come forward with no evidence demonstrating that. the Stevens partnership items were *not* overvalued as would satisfy their burden of production on this motion. Accordingly, the IRS is entitled to summary judgment on Count IV.

#### 5. *Count V*

 Count V, seeking abatement of excessive interest "[p]ursuant to Section 6404(e) [13] and any other provision of law, regulation, ruling, or judicial doctrine," is dismissed on jurisdictional grounds. The Court agrees with Defendant that interest abatement under this provision is a discretionary form of relief within the sole authority of the IRS, precluding the exercise of federal court jurisdiction. *Argabright v. United States,* 35 F.3d 472, 474–76 (9th Cir.1994); *see Bax v. Commissioner,* 13 F.3d 54, 58 (2d Cir.1993). Plaintiffs do not challenge that proposition in their memorandum of law and do not identify any other basis for the Court to order an abatement of interest.

#### 6. *Count VI*

In Count VI, it is alleged that the IRS is estopped to collect taxes, interest and pen-

alties by virtue of its conduct. The IRS points out that the Supreme Court has yet to resolve the issue of whether the doctrine of equitable estoppel can ever be applied against the federal government, and argues that, in any case, the issue should have been raised in the Tax Court proceeding in the first instance. (Mem. Law Supp. U.S.' Mot. Dismiss Alt. Summ. J. at 25–26.) The Second Circuit has described estoppel against the IRS as something that should be applied "with the utmost caution and restraint." *Estate of Carberry v. Commissioner,* 933 F.2d 1124, 1127 (2d Cir.1991) (internal quotation marks omitted).

 The Court does not exclude the possibility that the facts, when viewed in the light most favorably to Plaintiffs, might otherwise have been sufficient to permit Plaintiffs' estoppel claim to survive summary judgment. However, Plaintiffs' memorandum of law does not explain why this case should be the rare one in which an estoppel is permitted against the federal government. In fact, Plaintiffs do not even address the estoppel claim in their memorandum of law. Under these circumstances, the Court may grant the Defendants' motion for summary judgment as to this count on the grounds that Plaintiffs have abandoned it. *Engwiller v. Pine Plains Cent. Sch. Dist.,* 110 F.Supp.2d 236, 249 (S.D.N.Y.2000); *Valencia ex rel. Franco v. Lee,* 55 F.Supp.2d 122, 135–36 (E.D.N.Y.1999).

#### 7. *Count VII*

 Plaintiffs' claim that the consistency rule of § 6224(c)(2) entitles them

---

**13.** Section 6404(e) provides, in pertinent part, that:

[i]n the case of any assessment of interest on—

(A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Ser-

vice (acting in his official capacity) in performing a ministerial act, . . .

. . . .

the Secretary may abate the assessment of all or any part of such interest for any period.

to a refund of § 6621(c)'s penalty rate of interest based upon the decisions in *Miller v. Commissioner*, No. 10382–86, and *Miller v. Commissioner*, No. 10383–86, is not jurisdictionally barred under § 7422(h), since a claim for consistent treatment under § 6224(c)(2) is a nonpartnership item. *Monti II*, 223 F.3d at 82. Nevertheless, the claim must be rejected on the merits. Section 6224(c)(2) provides, in pertinent part, that

> [i]f the [IRS] enters into a settlement agreement with any partner *with respect to partnership items* for any partnership taxable year, the [IRS] shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement.

26 U.S.C. § 6224(c)(2) (emphasis added). Because § 6621(c) interest is an affected item, not a partnership item, *see* discussion *supra* Part II.B.4, the consistency rule of § 6224(c)(2) is inapplicable. *Klein*, 86 F.Supp.2d at 701; *Hirshfield*, 2001 WL 579783, at *17. Accordingly, the IRS is entitled to judgment as a matter of law on Count VII.

### 8. *Count VIII*

Summary judgment is denied as to Plaintiffs' § 7430 claim for administrative costs incurred in connection with filing their claims for refund and bringing this action. Neither party has briefed this issue, and, in any case, it likely cannot be resolved until a final judgment is entered in this action. *See Medical Inv. Trust v. United States*, No. Civ.99–439, 2001 WL 508351, at *1 (E.D.Ky. Mar.15, 2001); *Collins Music Co. v. United States*, 890 F.Supp. 465, 467 (D.S.C.1995).

### 9. *Counts IX, X, XI, XII, and XIII*

Because the Court already addressed the IRS's arguments opposing Plaintiffs'

recovery under Count IX (as incorporating Count III), *see* discussion *supra* Part II.A, the Court need not address those arguments again here. Similarly, the Court need not consider whether the IRS is entitled to summary judgment on either the remainder of Count IX (as incorporating Count I), or on Counts X, XI, XII, or XIII, each of which allege alternative grounds for recovery of the negligence and valuation overstatement penalties assessed under §§ 6653(a) and 6659. That is because Plaintiffs could recover nothing more and nothing less under these alternative grounds than the $20,000 the Court has already determined that they are entitled to recover.

### C. PLAINTIFFS' CROSS-MOTION TO SUPPLEMENT THE COMPLAINT

Plaintiffs cross-move, pursuant to Federal Rule of Civil Procedure 15(d), to file a supplemental complaint "to set forth events that have happened since the date on which the [C]omplaint was filed." (Carroll Aff. Opp'n Mot. Dismiss Alt. Summ. J. & Supp. Cross–Mot. Supplement Compl. ¶ 1.) These post-Complaint events are set forth *supra* Part I.D.3, and involve, in essence, Plaintiffs' amended claims for refund and the IRS's responses thereto. A motion to supplement a complaint should be "freely granted" in the absence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 65–66 (2d Cir.1995).

The IRS contends that the cross-motion should be denied because it is in bad faith and futile. Specifically, the IRS argues that the proposed supplemental complaint (1) would wrongfully permit Plaintiffs to "withdraw their admission" in their original Complaint that their original Form 843 was a "claim for abatement" denied by

letter dated September 13, 1996, rather than a "claim for refund" denied by letter dated January 18, 2000, and (2) permit Plaintiffs to assert a new claim for computational error based on the August 1998 Form 843 that is moot because the claim was allowed by letter dated January 4, 2000. (*See* U.S.' Mem. Law Opp'n Pls.' Cross–Mot. File Supplemental Compl.)

The Court grants Plaintiffs' cross-motion to file a supplemental complaint. To the extent the IRS claims that Plaintiffs are improperly seeking to recharacterize the import of the original Form 843 or the letter dated September 13, 1996, the Court observes (1) that both parties were careless in their initial characterizations of these documents and have sought to change such characterizations, (2) that these documents speak for themselves, and (3) that the granting of Plaintiffs' cross-motion does not bind the Court to the Plaintiffs' characterization. To the extent the IRS claims that the supplemental complaint would permit Plaintiffs to assert a new claim for computational error that has already been mooted, the Court observes that the supplemental complaint asserts no new claim for relief based on the August 1998 Form 843.

As a practical matter, granting Plaintiffs' motion to supplement the Complaint permits the Court to do what it has already done *supra* Part II.A.3, and that is to consider on the merits Plaintiffs' arguments that their Amended Forms 843–1996 and 843–1998 cured any failure to make full payment prior to bringing a claim for refund of the penalties assessed under §§ 6653(a) and 6659. *See United States v. Felicissimo,* No. 90 CIV 4094, 1994 WL 163997, at *2 (S.D.N.Y. Apr.22, 1994) (granting United States' Rule 15(d) motion in action against taxpayer in recognition of rule's underlying purpose " 'to facilitate decision on the merits, rather than on the pleadings or technicalities' "); *Nyscoseal, Inc. v. Parke, Davis & Co.,* 28 F.R.D. 24, 25–26 (S.D.N.Y.1961) (allowing supplemental complaint in favor of "the policy of the Federal Rules to prevent preliminary procedural technicalities from forestalling decisions on the merits").

\*　\*　\*　\*　\*　\*

The Court has considered the parties' remaining arguments, and finds that they either are meritless, or are not properly supported on the present record, or are unnecessary to the resolution of the pending motions, or would not otherwise change the result herein.

\*　\*　\*　\*　\*　\*

### III. CONCLUSION

In accordance with the foregoing, the IRS's motion for reconsideration of *Carroll II*'s reconsideration of *Carroll I* is GRANTED IN PART and DENIED IN PART as set forth *supra* Part II.A; and the IRS's motion to dismiss the Complaint, or in the alternative, for summary judgment, is GRANTED IN PART and DENIED IN PART, as set forth *supra* Part II.B; and the Plaintiffs' motion to supplement the Complaint is GRANTED; and

IT IS ORDERED that Counts I, II, and V of the Complaint are dismissed on jurisdictional grounds pursuant to Federal Rule of Civil Procedure 12(b)(1); that Counts III, IV, VI, and VII of the Complaint are dismissed on summary judgment grounds pursuant to Federal Rule of Civil Procedure 56; and that Plaintiffs shall be entitled to judgment in the amount of $20,000 on Count IX of the Complaint (as incorporating Count III) at such time as final judgment is entered; and

IT IS FURTHER ORDERED that Count IX (as incorporating Count I) and Counts X, XI, XII, and XIII of the Complaint, having been pled in the alternative to Count IX (as incorporating Count III),

are DISMISSED as MOOT, the only extant claims arising under Count VIII of the Complaint and under Paragraph 11 of Plaintiffs' Addendum to Form 1040X as incorporated into Paragraph 52 of the Complaint.

IT IS SO ORDERED.